[No. E007142. Fourth Dist., Div. Two. Jan. 16, 1991.]

DAVID W. YANCEY, Plaintiff and Appellant, v.
JOHN W. FINK, Defendant;
LLOYD LEWIS et al., Interveners and Respondents.

[No. E007143. Fourth Dist., Div. Two. Jan. 16, 1991.]

VICTOR VALLEY COUNTY WATER DISTRICT, Plaintiff, v.
LLOYD LEWIS et al., Defendants and Respondents;
DAVID W. YANCEY, Objector and Appellant.

## Counsel

Caldwell & Cropsey, Jules E. Fleuret, Brobeck, Phleger & Harrison, George H. Link, Sue L. Himmelrich and Rafael A. Gonzalez Caloni for Plaintiff and Appellant in No. E007142 and Objector and Appellant in No. E007143.

Gazzera, London, Smith & Cruz, Henry Cruz, Best, Best & Krieger, Virginia A. Ettinger and Geoffrey K. Willis for Interveners and Respondents in No. E007142 and Defendants and Respondents in No. E007143.

## Opinion

**HOLLENHORST, Acting P. J.**—In this consolidated appeal, David W. Yancey (hereinafter, the purchaser) appeals from two orders in two separate actions: one sustaining a demurrer to his complaint without leave to amend; and the other authorizing the redemption of certain real property by respondents Lloyd Lewis and Al Wilkins (the redemptioners). We dismiss in part and reverse in part.

### Factual and Procedural Background

In 1985, the redemptioners were the owners of certain parcels of real property (the property), located in the County of San Bernardino. In that year, the Victor Valley County Water District filed an action (the foreclosure action), alleging: that the redemptioners' property was within an assessment district created to finance the construction of certain water system improvements; that the improvements had been constructed and the assessments levied; and that the owners of various parcels, including the redemptioners, were delinquent in paying the assessments due. It sought to have

the assessments determined to be liens on the property, and to have the liens enforced by the sale of the property.

In 1988, after the defaults of both redemptioners had been taken, the trial court entered its "Decree of Foreclosure," by which it determined the amount of the several liens, and ordered the property sold by a commissioner which it named for that purpose. It further directed that, after the sale, "the Commissioner, after the time allowed by law for redemption has expired, which time is limited to one year from the date of sale, shall execute a deed to the purchaser or purchasers of the premises so sold at said sale; . . . ."

Consistent with the decree, the marshal's[1] notice of sale stated that the property was being sold "subject to redemption—CCP 729.010." Similarly, when the sale was held on February 23, 1989, the marshal orally reiterated that the sale was subject to a right of redemption. Despite these statements, the purchaser, who had not previously owned any interest in the property, bought it at the sale for $81,000, the amount due to the water district.[2] Five days later, the purchaser filed an action against the marshal (the declaratory relief action), which sought both a declaration that the property was not encumbered by a right of redemption, and the issuance of a peremptory writ of mandate, directing the marshal to deliver an absolute deed to the purchaser. The purchaser also obtained a temporary restraining order (TRO), enjoining the marshal from honoring the alleged right of redemption set forth in the decree, as well as an order to show cause regarding the issuance of a comparable preliminary injunction.

Prior to the hearing on the order to show cause, the redemptioners informed the marshal of their intent to exercise the right of redemption. When the marshal advised them of the temporary restraining order, the redemptioners obtained leave to intervene in the purchaser's declaratory relief action, and successfully opposed the application for the preliminary injunction, as a result of which the TRO was dissolved.

Despite this setback, the purchaser refused to consent to the proposed redemption. Accordingly, the redemptioners filed a petition (the redemption petition) in the foreclosure action for an order resolving the dispute, pursuant to Code of Civil Procedure section 729.070. At the same time,

---

[1] The record offers no explanation as to why the sale was conducted by the county marshal rather than by the appointed commissioner.

[2] The record does not indicate what the fair market value of the property was at the time of the sale. However, some indication of its value may be had from the fact that the face amount of the numerous deeds of trust which were junior to the water district assessments, and which were therefore wiped out by the foreclosure sale, totalled nearly $650,000.

they demurred to the declaratory relief complaint, challenging the purchaser's action as an impermissible collateral attack on the judgment in the foreclosure action.

In an order styled as a "Statement of Decision,"[3] the trial court sustained the redemptioners' demurrer to both counts of the declaratory relief action, without leave to amend. The following month, after an evidentiary hearing on the allegations of the redemption petition, the trial court in the foreclosure action ruled that the redemptioners did have a right of redemption, and that the redemption price was $81,443.83. The redemptioners then paid the redemption price, and received a certificate of redemption from the marshal, restoring their record title to the property.

The purchaser appeals both from the order sustaining the demurrer to his declaratory relief action, and from the ruling on the redemption petition in the foreclosure action. The two appeals have been consolidated for decision.

## ISSUES ON APPEAL

The purchaser argues: (1) that the right of redemption was repealed in 1982, and that therefore it was reversible error for the trial court in the foreclosure action to permit the redemptioners to redeem; (2) that this defect was properly raised by the declaratory relief action, because the absence of a right of redemption renders that portion of the decree of foreclosure void, and thus subject to collateral attack; and (3) even assuming that there was a right to redeem, the redemption price set by the trial court was too low.

Naturally, the redemptioners dispute each of these contentions, and in addition offer a multitude of other reasons why the demurrer was properly sustained.

As will be seen, we are precluded from considering the merits of the ruling on the demurrer. As to the remaining issues, we conclude that the trial court erred in finding that a right of redemption exists under these facts. Therefore, it is unnecessary to determine whether it properly calculated the redemption price.

## APPEALABILITY

The redemptioners obliquely raised the issue of the appealability of the orders from which the purchaser appeals, when they took issue with the

---

[3] Code of Civil Procedure section 632 calls for the issuance of a statement of decision "upon the trial of a question of fact by the court . . . ." The trial court's choice of the same term to explain its ruling on a demurrer was unfortunate, since it implies resolution of issues of fact when no such issues were before it.

purchaser's characterization of those rulings as "final judgments." The purchaser defended the appealability of both orders in his reply. While the order deciding the redemption petition in the foreclosure action is appealable, subsequent actions of the purchaser have divested this court of jurisdiction to consider the order sustaining the demurrer in the declaratory relief action.

## A. The Order Sustaining the Demurrer

■ An order sustaining a demurrer without leave to amend is not appealable; any appeal must be taken from the subsequent dismissal of the action. (*Lavine v. Jessup* (1957) 48 Cal.2d 611, 614 [311 P.2d 8]; *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1254 [239 Cal.Rptr. 18].) Here, there is no judgment of dismissal; indeed, the minute order does not even mention the possibility of a dismissal. ■ The purchaser acknowledges that there is no order dismissing the action,[4] but requests that we deem the order sustaining the demurrer to include such an order, and to interpret his appeal to be from that dismissal, as was done in *Bellah v. Greenson* (1978) 81 Cal.App.3d 614, 618, fn. 1 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118], and *California State Employees' Assn. v. State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60].

In response, we informed the purchaser that "it is the practice of this court whenever possible to require the filing of an order or judgment of dismissal rather than construing an order sustaining a demurrer to contain language that it does not have." Accordingly, we directed the purchaser "to serve and file a certified copy of a proper order or judgment of dismissal . . . ." Rather than follow these instructions, however, the purchaser filed a voluntary request for the dismissal of the entire declaratory relief action, with prejudice. The superior court clerk entered the dismissal, as requested, on September 17, 1990.

While a compulsory dismissal by order of a court is a judicial act from which a plaintiff may appeal, a voluntary dismissal by a plaintiff is

---

[4] While he acknowledges the defect, he does not admit to any responsibility for that defect. Instead, the purchaser faults the court clerk for failing to "follow" that portion of Code of Civil Procedure section 664 which provides that when "trial has been had by the court, judgment must be entered by the clerk, in conformity to the decision of the court, immediately upon the filing of such decision."

The purchaser cannot so easily shift culpability for the lack of an appealable order. Section 664 requires the court clerk to enter a judgment; it does not, however, require the clerk to interpret a ruling on a demurrer by certain parties to certain causes of action to determine whether dismissal of the entire action is called for, and if so, to draft a written order or judgment of dismissal and obtain the court's signature, as required by Code of Civil Procedure section 581d. That is the responsibility of the parties or their counsel.

accomplished by a ministerial act of the clerk, filing from which no appeal lies. (*Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782].) Respecting appealability, "there is no kinship of a voluntary dismissal to a final judgment. A wilful dismissal terminates the action for all time and affords the appellate court no jurisdiction to review rulings on demurrers or motions made prior to the dismissal." (*Cook* v. *Stewart McKee & Co.* (1945) 68 Cal.App.2d 758, 760-761 [157 P.2d 868].) Besides, a plaintiff "obviously [can] not appeal [his] own voluntary dismissal . . . ." (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 787 [176 Cal.Rptr. 104, 632 P.2d 217].)

By failing to obtain a properly appealable order, and then by divesting us of whatever jurisdiction we might have had by voluntarily dismissing the entire action, the purchaser has left us with no alternative but to dismiss his appeal from the order sustaining the demurrer in the declaratory relief action.[5]

### B. The Ruling on the Redemption Petition

■ The purchaser argues that the ruling on the redemption petition in the foreclosure action is made appealable by both subdivisions (b) and (h) of Code of Civil Procedure section 904.1.[6]

His reliance upon Code of Civil Procedure, section 904.1, subdivision (h) is misplaced, because its application is expressly limited to interlocutory judgments. A judgment is interlocutory, as opposed to final, only when something "further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties . . . ." (*Lyon* v. *Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11].) An example is the type of ruling contemplated by subdivision (h), in which the court determines that a particular person is entitled to redeem, but orders an accounting to determine the redemption price. Here, however, the right to redeem and the price to be paid to exercise such a right have both been determined in the ruling appealed from by the purchaser. Thus, it is not interlocutory.

---

[5] Our dismissal is not as draconian as it first sounds, since the primary issue presented by that appeal—i.e., whether there is any right of redemption—has also been raised by his appeal from the order in the foreclosure action, and will be considered by us in that context.

[6] That section provides in relevant part: "An appeal may be taken from a superior court in the following cases:

"(a) From a judgment, except (1) an interlocutory judgment, other than as provided in subdivisions (h) and (i), . . .

"(b) From an order made after a judgment made appealable by subdivision (a).

" . . . . . . . . . . . . . . .

"(h) From an interlocutory judgment, order, or decree, hereafter made or entered in an action to redeem real or personal property from a mortgage thereof, or a lien thereon, determining the right to redeem and directing an accounting."

The purchaser's salvation lies in Code of Civil Procedure, section 904.1, subdivision (b), which authorizes an appeal from certain postjudgment orders. Such appeals are permitted when the order follows an appealable judgment to which the order relates (usually by enforcing the judgment or staying its execution), and when the appeal could not have been brought on the same grounds from the judgment itself. (Cal. Civil Appellate Practice 2d (Cont.Ed.Bar 1985) Appealable Judgments and Orders, §§ 2.32-2.36, pp. 43-46; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (Rutter 1990) §§ 2:149-2:153, pp. 2-42 & 2-43.)

Each of these requirements has been met here. The order followed an appealable judgment, i.e., the decree of foreclosure. It related to that prior judgment by specifying how the right of redemption contained in that judgment was to be exercised or enforced. ██ ██ ██ And the purchaser could not have taken the same appeal from the judgment itself.[7] Therefore, the purchaser may appeal from the ruling on the redemption petition.

## SCOPE OF THE APPEAL

██ Having failed to prevent the appeal entirely, the redemptioners next try to limit the scope of the appeal. Specifically, they contend that the question of whether the sale was subject to a right of redemption is outside of the scope of the appeal, and thus beyond our consideration. They appear to reason as follows: (1) on appeal from the ruling on the redemption petition, only the matters decided in that ruling may be reviewed; (2) that ruling could not have decided any issues except those raised in the petition; (3) the petition, having been brought pursuant to Code of Civil Procedure section 729.070, could not have raised any issues except those authorized by that statute; (4) while the statute authorizes a determination of the proper redemption price and of whether the particular person seeking to redeem the property is entitled to do so, the determination of whether there is any

---

[7] Arguably, this last prerequisite—i.e., that the appeal from the order must raise issues which were not and could not have been raised in an appeal from the judgment itself—has not been met, since a party to the foreclosure action could have taken an appeal from the prior judgment on the ground that no right of redemption was permitted by law. "The reason for this general rule is that to allow the appeal from the order . . . would have the effect of allowing two appeals from the same ruling and might in some cases permit circumvention of the time limitations for appealing from the judgment." (*Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 358 [110 Cal.Rptr. 353, 515 P.2d 297].)

Here, however, there was no possibility of such abuse by the purchaser, and thus that rule has no applicability. At the time that the judgment was entered, the purchaser was not a party to the foreclosure action, and did not have any interest in the property. Therefore, he was not an aggrieved party, and had no standing to appeal the judgment. Accordingly, he should be free to appeal the ruling on the redemption petition, even though he is raising an issue which could have been raised by some other appellant in an appeal from the judgment.

right of redemption at all is beyond the scope of the statute; and (5) therefore, on review, this court may not consider whether there is a right to redemption in the abstract.

██ ██ ██ ██ ██ We decline to follow the redemptioners' logic, because it relies upon an absurd interpretation of the statute.[8] Code of Civil Procedure section 729.070, subdivision (a), provides in relevant part: "If the purchaser and the person seeking to redeem the property disagree on the redemption price or as to whether the person is entitled to redeem the property, or if the purchaser refuses the tender of the redemption price pursuant to Section 729.080, the person seeking to redeem may file a petition with the court for an order determining the redemption price or whether the person is entitled to redeem the property." Thus, the statute expressly authorizes the trial court to determine whether the petitioners have the right to redeem the property. If, under applicable law, no right of redemption exists in favor of anyone whatsoever, then obviously the petitioners cannot have such a right.

Accordingly, a finding that certain petitioners (here, the redemptioners) are entitled to redeem the property at some price inescapably includes the preliminary finding that the property was sold subject to a right of redemption. That implicit finding having been made by the trial court in its ruling on the redemption petition, and the purchaser having appealed from that ruling, the propriety of that finding is properly before us.

## THE EXISTENCE OF A RIGHT OF REDEMPTION

██ The central issue presented by this appeal is whether the trial court erred when it determined that the purchaser's title to the property was subject to defeasance by a right of redemption. Having determined that this question is properly before us, we now turn to the merits of that issue. As will be seen, we find that the trial court did err, and that its order must therefore be vacated.

### A. RIGHTS OF REDEMPTION IN GENERAL

██ The right of redemption is the statutory right of a debtor to repurchase, or redeem, its property after that property has been involuntarily sold to satisfy a debt. "One effect of the redemption right is that the purchaser of real property is forced to take a title which is defeasible for a year." (16 Cal. Law Revision Com. Rep. (1982) p. 1019.)

---

[8] Statutory provisions "must be given a reasonable and common sense interpretation . . . , practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].)

At one time, the right to redeem following an involuntary sale was widespread. The Code of Civil Procedure formerly specified that nearly all execution sales of real property were subject to a right of redemption.[9] Similarly, various provisions in other codes, when authorizing execution sales for various purposes, stipulated that the property would be sold subject to a right of redemption.[10]

The application of the right to redeem after a sale was severely limited on July 1, 1983, when two pieces of legislation took effect. The Enforcement of Judgments Law (Stats. 1982, ch. 1364) substantially revised the entire title of the Code of Civil Procedure (title 9, commencing with section 680.010) dealing with creditor's remedies. One of its purposes was to repeal the right of redemption of property sold at execution sales.[11] Companion legislation (Stats. 1982, ch. 497) was designed to conform those other codes to the Enforcement of Judgments Law by, inter alia, repealing their provisions regarding redemption following execution sales.[12]

■ The redemptioners contend that the alleged right of redemption upon which they rely survived those statutory revisions. They are mistaken.

### B. ENFORCEMENT OF IMPROVEMENT BOND ACT ASSESSMENTS

As noted in the complaint, the bonds at issue in the foreclosure action had been issued by the Victor Valley County Water District pursuant to the Improvement Bond Act of 1915. That act (which is codified at div. 10 of the Sts. & Hy. Code, commencing with § 8500) authorizes two distinct procedures for the enforcement of delinquent assessments: one under part 13, entitled "Sale for Delinquency," commencing with section 8800; and the other under part 14, entitled "Foreclosure by Action," commencing with section 8830. Neither of those procedures authorizes a county water district to sell, subject to a right of redemption, real property which secures delinquent assessments.

---

[9] Subdivision (a) of former Code of Civil Procedure section 700a provided in relevant part: "Sales of personal property, and of real property, when the estate therein is less than a leasehold of two years' unexpired term, are absolute. In all other cases the property is subject to redemption, as provided in this chapter."

[10] See, for instance, former Streets and Highways Code sections 5422, 6617, 8832, and 9356, and former Revenue and Taxation Code section 32373.

[11] See: 16 California Law Revision Commission Reports (1982), pages 1019 and 1118-1122; Report of Assembly Committee on Judiciary on Assembly Bills Nos. 707 and 798 (reprinted at 16 Cal. Law Revision Com. Rep. (1982) p. 2045, [hereinafter, the Assembly Report] at p. 2075); and Report of the Senate Committee on Judiciary regarding Assembly Bill No. 707 as amended June 21, 1982, pages 3 and 16.

[12] Report of Assembly Committee on Judiciary regarding Assembly Bill No. 798, as amended January 4, 1982; Assembly Third Reading analysis of Assembly Bill 798, as amended January 19, 1982, prepared by Assembly Office of Research.

## 1. *Sales Under Streets and Highways Code Section 8800*

Streets and Highway Code section 8800 provides: "Upon default in the payment of any installment of principal or interest on any assessment or reassessment, the lands securing such installments and assessments shall be sold in the same manner in which real property in such city is sold for the nonpayment of general city taxes, and be subject to redemption in the same manner and to the same extent that real property in such city sold for the nonpayment of general city taxes may be redeemed from such taxes."

Because the statutory language holds out the possibility that property sold under this section could be subject to a right of redemption, the redemptioners insist that this was the authority by which the sale below was conducted.[13] Upon analysis, however, their reliance is misplaced.

By itself, Streets and Highways Code section 8800 does not provide for any specified sales procedure or for any right of redemption. Instead, it incorporates by reference the procedures (and any rights of redemption which may be attendant to those procedures) governing the sale of real property in the "city" to collect delinquent "general city taxes." The act defines "city" to include all "public corporations, districts and agencies." (Sts. & Hy. Code, § 8503.) Here, the particular type of governmental entity which issued the bonds is a county water district. Thus, section 8800 authorizes property to be sold pursuant to the same procedures and subject to the same rights of redemption as apply when a county water district sells property to enforce general taxes of that district.

Such sales by county water districts are governed by the County Water District Law, codified at division 12 of the Water Code. (Wat. Code, § 30000 et seq.) It provides that general district taxes constitute a lien on all property within the district. (Wat. Code, § 31707.5, subd. (b).)[14] The enforcement of those liens is governed by Water Code section 31709, which provides: "District taxes whether for the payment of a bonded indebtedness

---

[13] Like many of the positions which the redemptioners take in their brief, they offer no reasoned argument to support this contention. Instead, they state the proposition as if it were a matter of undisputed fact, and then proceed to the conclusion which they wish us to draw from that proposition. Their litany of unsupported contentions may be likened to handfuls of sand being repeatedly thrown into the jurisprudential eyes of this court: they slow our progress, but do not permanently blind us to their lack of merit.

[14] Section 31707.5 reads: "(a) Taxes for the payment of all charges, claims, expenditures and expenses, other than a bonded debt, of any improvement district created pursuant to this division are a lien on all the property described in the resolution of the board creating such improvement district.

"(b) All taxes for purposes other than those specified in Section 31707 or subdivision (a) of this section are a lien on all the property in the district."

and the interest on it or for other purposes are of the same force and effect as other liens for taxes, and their collection shall be enforced by the same means as provided for the enforcement of liens for state and county taxes."

The reference in Water Code section 31709 to "state and county taxes" is exceedingly broad. Without taking the time to catalog all of the different types of taxes which may be levied by the state and by a county or a city and county,[15] we may confidently observe that they are both numerous and varied, and that the procedure by which those taxes may be secured by liens, and by which those liens may be enforced, are similarly diverse.

For our purposes, however, we need not identify and analyze each of those procedures. Here, the redemptioners claim that the property was sold subject to a right of redemption. Thus, the various and sundry procedures incorporated by the expansive reference in Water Code section 31709 are irrelevant unless they provide for a right of redemption. To our knowledge, there is only one statutory mechanism for the enforcement of tax liens which could be (or more correctly, until several years ago could have been) characterized as involving a sale subject to a right of redemption: so-called "tax sales" of real property to satisfy delinquent ad valorem property taxes, governed by part 6 of division 1 of the Revenue and Taxation Code, beginning with section 3351.

Prior to 1984, the tax collector of each county would annually publish a notice of intent to sell all property against which the property taxes were delinquent. (Former Rev. & Tax. Code, § 3351.) Thereafter, the property would be sold to the state "by operation of law and the declaration of the tax collector . . . ." (Former Rev. & Tax. Code, § 3436.) Following that "sale," the property owner had five years within which to redeem the property before the tax collector formally deeded it to the state. Even after the state had received record title, the taxpayer could still redeem until either the property was sold to a third party (Rev. & Tax. Code, § 3707), or the state obtained a court decree quieting its title to the property (former Rev. & Tax. Code, § 3614.5). Thus, if one considered the conveyance to the state to be a sale, former law did provide for a postsale redemption.

This statutory scheme was revamped in 1984, when the Legislature abolished the fiction of the sale to the state. Now, all property securing real property taxes which remain unpaid at the end of the fiscal year is declared to be "tax-defaulted." (Rev. & Tax. Code, §§ 3351 & 126.) No sale occurs until at least five years after the property becomes tax-defaulted. (Rev. & Tax. Code, § 3691.) While the property may be redeemed at any time prior

---

[15] Water Code section 14 defines "county" to include a "city and county."

to the sale (Rev. & Tax. Code, § 4101), that right of redemption is terminated by the sale (Rev. & Tax. Code, § 3707).[16] These statutory revisions went into effect on September 11, 1984 (Stats. 1984, ch. 988, p. 3406); therefore, the postsale right of redemption which existed under former law had been abolished well before the filing of the foreclosure action, the entry of the decree of foreclosure, and the marshal's sale of the property.

In summary, Streets and Highways Code section 8800 grants only such rights of redemption as are afforded by the procedures which it incorporates by reference. In this case, those procedures do not include such a right. Therefore, the trial court's conclusion that the sale was subject to a right of redemption cannot be justified by this section.

### 2. *Sales Under Streets and Highways Code Section 8830*

As noted previously, assessments made pursuant to the Improvement Bond Act may also be enforced under part 14 of the act. (Sts. & Hy. Code, § 8830 et seq.) In contrast to the procedures incorporated by Streets and Highways Code section 8800, section 8830 provides that delinquent assessments may "be collected by an action brought in the superior court to foreclose the lien thereof."

At one time, that part expressly provided that property sold pursuant to such actions was subject to redemption. Streets and Highways Code section 8832 formerly read: "The court shall have the power to adjudge and decree a lien against the lot or parcel of land covered by the assessment or reassessment for the amount of the judgment and to order the premises to be sold on execution as in other cases of the sale of real property by the process of the court, with the same rights of redemption.

"The foreclosure action shall be governed and regulated by the provisions of this chapter, and also where not in conflict with this chapter, by the codes of this State."

However, in 1982, that section was amended by deleting the words "with the same rights of redemption." (Stats. 1982, ch. 497, § 173, p. 2217.) Both the Law Revision Commission, which drafted the legislation, and the Legislature, which passed it, said that the purpose of that deletion was to "reflect the repeal of the statutory right of redemption" from execution sales. (15 Cal. Law Revision Com. Rep. (1980) p. 2670; Assembly Report at p. 2120.)

Even without those explanations, it is clear from the nature of the amendment that its intended purpose, and its effect, is to remove any statutory

---

[16] Subdivision (a) of Revenue and Taxation Code section 3707 provides: "The right of redemption shall terminate at the close of business on the last business day prior to the date the sale begins."

authorization for a right of redemption from this part of the Streets and Highways Code. Accordingly, neither of the two enforcement provisions of the Improvement Bond Act of 1915 supports the trial court's conclusion that the property was sold subject to a right of redemption.

## C. Other Alleged Sources of a Right of Redemption

Despite the absence of statutory authority in the Streets and Highways Code, the redemptioners attempt to retain the windfall afforded them[17] by offering other justifications for finding a right of redemption to exist in this instance. None have merit.

### 1. *Code of Civil Procedure section 701.680*

First, the redemptioners argue that, while the express statutory authority for a sale subject to a right of redemption may have been deleted from section 8832 of the Streets and Highways Code, such a right has not been entirely repealed. ■ In response, the purchaser cites to Code of Civil Procedure section 701.680, subdivision (a), which states that subject to certain exceptions which have no application here, "a sale of property pursuant to this article is absolute and may not be set aside for any reason." In reply, the redemptioners contend that the language of that section "only provides that the Marshal's Sale is final and cannot be set aside. It does not state that there is no right of redemption."

Contrary to the redemptioners' characterization, an "absolute" sale is not merely final, but is also without a right of redemption. With respect to execution sales, "absolute" has the same meaning as it has in the phrase "absolute deed," which is defined as a "document of conveyance without restriction or defeasance . . . ." (Black's Law Dict. (5th ed. 1979) p. 9.) Accordingly, our Supreme Court has equated the repeal of a right of redemption with "an act making a sale absolute instead of conditional . . . ." (*Tuolumne Redemption Co.* v. *Sedgwick* (1860) 15 Cal. 515, 524, overruled on other grounds, *Welsh* v. *Cross* (1905) 146 Cal. 621, 630 [81 P. 229].)

---

[17] The windfall would come from the fact that under current law, none of the liens wiped out by the foreclosure sale would reattach upon the redemption. (Cf. Code Civ. Proc., § 729.080, subd. (e).) In substance, the redemptioners are arguing that the law permits them to buy a piece of real property, encumber it with $650,000 in deeds of trust, default on their improvement bond assessments, allow the property to be sold pursuant to the enforcement provisions of the Improvement Bond Act of 1915, and then redeem the property free and clear of the $650,000 of voluntary liens merely by paying the delinquent assessments and penalties. They fail to identify the public policy which would be advanced by rewarding them for their failure to pay their taxes when due, particularly when that reward is in the form of an unearned half-million dollar increase in their equity in the property.

That "absolute," as used in this particular section, is synonymous with "without a right of redemption" is made even more certain from the language of former Code of Civil Procedure section 700a, which section 701.680 replaced. The former law specifically defined property which was subject to redemption as being that property the sale of which had not been absolute.[18] By declaring that all execution sales are absolute, the new law necessarily means that none of the property sold is subject to redemption. Indeed, the legislative history unequivocally indicates that this was precisely the intended effect of the statutory amendment.[19]

### 2. *Code of Civil Procedure section 729.010*

The redemptioners next seek support for their insupportable position by quoting another portion of the legislative committee's comment to Code of Civil Procedure section 701.680: "The elimination of the statutory right to redeem after a sale pursuant to this article *does not* affect rights to redeem afforded by other law. See, e.g., Code Civ. Proc. § 729.010 (redemption from certain *foreclosure sales*); Harb. & Nav. Code § 504 (20-day redemption period after sale of vessel on lien for repairs); Rev. & Tax. Code § 4101 (redemption of tax-deeded real property); Sts. & Hy. Code § 6530 (12-month redemption period after sale by treasurer to collect assessments under Improvement Act of 1911); I.R.C. § 6337 (120-day redemption period after sale of real property to collect federal taxes)." (Assem. Rep. at p. 2075, italics by redemptioners.)

It is not enough, however, to say that "other law"—i.e., law outside of title 9 of the Code of Civil Procedure—affords a right of redemption in certain circumstances. Rather, the redemptioners must show that at least one of those other laws applies to the circumstances here: the execution sale of real property by a county water district to enforce delinquent assessments under the Improvement Bond Act of 1915. None of the examples listed in the committee's comment apply, and the redemptioners have not cited to any others.

In particular, the redemptioners' reliance upon Code of Civil Procedure section 729.010 is misplaced. The scope of that section is expressly limited to (1) judicial foreclosures of a mortgage or deed of trust (2) in which a deficiency judgment is being sought.[20] Neither of those prerequisites is present here.

---

[18] See text of former Code of Civil Procedure section 700a at footnote 9, *ante.*

[19] "Section 701.680 reflects the repeal of the statutory right of redemption after execution sales." (Assem. Rep. at p. 2075; and see authorities cited in fn. 11, *ante.*)

[20] Subdivision (a) of section 729.010 of the Code of Civil Procedure provides: "If the decree of foreclosure of a mortgage or deed of trust on real property pursuant to Section 726 determines that a deficiency judgment may be ordered against the defendant, the real property

### 3. *The Intent of the Water District*

■ The redemptioners also point out that since the water district drafted the decree of foreclosure which first mentioned a right of redemption, the district "clearly intended that there be a right of redemption to the property . . . ." Whether true or not, the intent of the plaintiff in the foreclosure action is irrelevant to the issue of whether the sale is subject to a right of redemption. That right is a creature of statute. (*Tuolumne Redemption Co. v. Sedgwick, supra,* 15 Cal. at pp. 522-523.) It applies whenever the Legislature says it applies, but only then. A right of redemption cannot be willed into or out of existence at the whim of the foreclosing party.

### 4. *Estoppel*

■ Finally, the redemptioners complain that when the purchaser bought the property, he knew "that it was a sale subject to a right of redemption." While they never use the term estoppel, the significance which they apparently seek to attach to this undisputed fact is that the purchaser should be barred from denying the existence of that right because he bought the property with full knowledge that the title he would receive would allegedly be defeasible for a year.

The doctrine of equitable estoppel is codified in Evidence Code section 623: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

Those elements are not present here. There is no evidence that the purchaser led anyone to believe that there was a right of redemption. To the contrary, the possibility of such a right was suggested, not by the purchaser, but by the decree of foreclosure entered in an action to which the purchaser was a stranger. Furthermore, the purchaser affirmatively demonstrated to everyone concerned that he believed there was *no* right of redemption, by bringing an ex parte application on the morning of the sale for the apparent purpose of delaying the sale until the issue of the existence of a right of redemption could be litigated.[21] No one can honestly claim to have been misled as to the purchaser's position on that subject.

---

(other than a leasehold estate with an unexpired term of less than two years at the time of levy) shall be sold subject to the right of redemption."

[21] From the comments of counsel at the hearing on the redemption petition, it also appears that, at the sale itself, the purchaser objected to the sale being conducted subject to an alleged right of redemption. No evidence of such an objection was permitted to be introduced at the hearing, however, since the trial court sustained the redemptioners' evidentiary objections

## D. CONCLUSION

There is no right of redemption following execution sales in general. Nor is there a right of redemption following a sale by a county water district to enforce delinquent assessments under the Improvement Bond Act of 1915. Neither the water district's intent, the marshal's mistaken reference to Code of Civil Procedure section 729.010, nor the purchaser's knowledge of the erroneous provision of the decree of foreclosure, creates a right of redemption when none exists by statute. In ruling on the redemption petition that there was a right of redemption, the trial court erred. By depriving the purchaser of the valuable property which he had lawfully bought, that error is prejudicial.

### DISPOSITION

The appeal from the order sustaining the demurrer to the declaratory relief action is dismissed. Both sides shall bear their own costs with respect to it.

Regarding the postjudgment order on the redemption petition, the trial court is instructed to vacate its prior order, and to enter an order (1) denying the redemptioners' petition,[22] (2) directing the redemptioners to convey the property in fee simple to the purchaser, and (3) taking whatever other actions the trial court deems necessary to restore the parties to the

---

that "the knowledge that [the purchaser] may or may not have had during that day at the sale" was irrelevant.

The redemptioners cannot have it both ways. Having successfully maintained below that the purchaser's knowledge is irrelevant, they cannot now claim that that same knowledge estops the purchaser from challenging the existence of a right of redemption.

[22] At oral argument, the redemptioners described numerous issues of disputed fact which, they claimed, need to be decided before it can be conclusively determined that there is no right of redemption in this particular situation. They urged us not to instruct the trial court to deny their petition, arguing that they will be deprived of their right to trial unless they are allowed to litigate those issues on remand.

They are wrong, for two reasons. First of all, the factual issues which they alleged are either irrelevant, outside of the record, beyond the scope of the issues as framed by the redemptioners' own petition, or a combination of the above. Besides, at the hearing on their redemption petition, the redemptioners had the opportunity to offer evidence of every fact which bore on the existence of a right of redemption. If they failed to do so, there is no reason why they should get a second bite at the apple.

They also claimed at oral argument that the sale should be set aside because of the redemptioners' alleged reliance upon the marshal's characterization of the sale as being subject to a right of redemption. Wrong again. Such a claim is beyond the scope of a redemption petition, and thus would have to be brought as a separate action. At the time of the sale, Code of Civil Procedure section 701.680, subdivision (c)(1), provided that such a sale could be vacated *only* if the judgment creditor bought the property, and *only* if the action to vacate was commenced within six months of the date of the sale.

positions they occupied prior to the unauthorized redemption.[23] The purchaser shall recover his costs on appeal.

Dabney, J., and Timlin, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 10, 1991.

---

[23] Code of Civil Procedure section 908; 9 Witkin, Calfornia Procedure (3d ed. 1985) Appeal, section 645, pages 628-629.