[No. H024649. Sixth Dist. Aug. 29, 2003.]

GREGORIO M. GONZALEZ, Plaintiff, Cross-defendant and Appellant, v. JEFF M. TOEWS et al., Defendants, Cross-complainants and Respondents.

## COUNSEL

Law Office of Eric F. Hartman and Eric F. Hartman for Plaintiff, Cross-defendant and Appellant.

Adleson, Hess & Kelly, Phillip M. Adleson and Duane W. Shewaga for Defendants, Cross-complainants and Respondents.

## OPINION

**PREMO, Acting P. J.**—Plaintiff Gregorio M. Gonzalez sued defendants Jeff M. Toews and Loren Toews to set aside a sheriff's sale of real property and for related causes of action. The trial court sustained defendants' demurrer to the third amended complaint and granted defendants' motion for summary judgment as to their quiet title cross-complaint on the basis of Code of Civil Procedure section 701.680 (execution sale is absolute).[1] On appeal, plaintiff contends that the trial court erred in several respects. We disagree and affirm the judgment.

### BACKGROUND

In 1990, Golden State Mortgage Company obtained a judgment against plaintiff. In October 1997, the Santa Clara County Sheriff levied execution

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

upon plaintiff's 22–acre parcel of real property in Milpitas to enforce the judgment. Plaintiff then petitioned for bankruptcy. In his bankruptcy papers, plaintiff declared under penalty of perjury that his residence was on Alum Rock Avenue in San Jose and his Milpitas property was "unimproved land." In April 1999, the bankruptcy court dismissed plaintiff's case. In July 1999, the sheriff sold the Milpitas property to defendants. In October 1999, plaintiff filed this action. The complaint essentially alleges that the sheriff's sale was void because the parcel could only be sold via court order because it contained a dwelling.

In December 1999, defendants filed an unlawful detainer action against plaintiff to evict him from the Milpitas property. Before trial, the court ruled that evidence whether the property constituted a dwelling was inadmissible. However, during trial, plaintiff introduced evidence indicating that the property was a dwelling. A jury returned a special verdict as follows: "The July 12, 1999 CCP § 1161a(b)(1) execution sale was not in compliance with the mandatory notice requirement of CCP § 701.540."[2] From this, the court concluded that judgment should be entered in favor of plaintiff. On defendants' motions for new trial and judgment notwithstanding the verdict, the court acknowledged that it had tried the wrong issue.[3] It pointed out that the section 701.540 issue was irrelevant because section 701.560 provides that "Failure to give notice of sale as required by this article does not invalidate the sale." It opined that what should have been tried was whether the execution sale was absolute under section 701.680 or void as sold without a court order for dwellings under section 704.740. But it denied defendants' motions after concluding that plaintiff's evidence established that the Milpitas property constituted a dwelling. According to the court, "Had the trial court actually adhered to its in limine ruling and prohibited evidence concerning the nature of the property, then a retrial would be required to determine whether or not the property was in fact a dwelling when the execution sale commenced. However, the trial court allowed [plaintiff] to introduce evidence that, since January 1999, [plaintiff] and his son lived in a house that was built on the property in 1996. Further, [plaintiff] was also permitted to introduce additional testimony indicating that the house had a street address, a driveway, a front door, a gate, and a mailbox.... Based on this evidence, the

---

[2] Section 701.540 details provisions and procedures for notices of sale of an interest in real property. Relying on this statute, plaintiff had advanced that the sheriff did not serve or attempt to serve an occupant of the property when he attempted to post the notice of sale on a conspicuous place.

[3] For reasons that are not explained in the record, the judge who heard defendants' posttrial motions was not the trial judge.

property constituted a dwelling when the execution sale commenced." The appellate division of the superior court affirmed the resulting judgment for plaintiff.[4]

## DISCUSSION

"Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable. In 1982, following the recommendations of the California Law Revision Commission, the Enforcement of Judgments Law (EJL) was enacted. The EJL appears in sections 680.101 through 724.260 and is a comprehensive scheme governing the enforcement of all civil judgments in California." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 [39 Cal.Rptr.2d 432].)

Division 2, chapter 3, article 1 of the EJL provides that "Except as otherwise provided by statute, this chapter governs enforcement of a money judgment by a writ of execution." (§ 699.010.) Chapter 3, article 6 deals with the general authority of the levying officer to sell property after levy. Section 701.680 is within article 6. Subdivision (a) of the statute states: "Except as provided in paragraph (1) of subdivision (c), a sale of property pursuant to this article is absolute and may not be set aside for any reason." Paragraph (1) of subdivision (c) provides that "If the sale was improper because of irregularities in the proceedings, because the property sold was not subject to execution, or for any other reason," the judgment debtor or a successor in interest may bring an action to set aside the sale within 90 days from the sale date "if the purchaser at the sale is the judgment creditor." Paragraph (2) of subdivision (c) states: "The judgment debtor, or the judgment debtor's successor in interest, may recover damages caused by the impropriety. If damages are recovered against the judgment creditor, they shall be offset against the judgment to the extent the judgment is not satisfied. If damages are recovered against the levying officer, they shall be applied to the judgment to the extent the judgment is not satisfied."

Division 2, chapter 4 of the EJL provides for exemptions to enforcement of a money judgment. Chapter 4, article 4 deals with the homestead exemption. Section 704.740 is within article 4. It states: "the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article."

Plaintiff essentially argues (in several different ways) that section 704.740 trumps section 701.680. He focuses upon the literal language, "a dwelling

---

[4] There is no opinion in the record.

may not be sold ... except pursuant to a court order," and concludes, without citation of authority, that a dwelling sold without court order is void and subject to being set aside. Plaintiff's analysis is erroneous.

"Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters). [Citations.] [¶] But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ It is immediately apparent from an examination of the statutory scheme and words used that (1) division 2, chapter 3, of the EJL is all-encompassing—it deals with procedures for enforcement of judgments by writ without exception and (2) section 701.680 is crystal clear—it states that execution sales are absolute and may not be set aside "for any reason" unless the judgment creditor was the purchaser. It is also apparent that (1) division 2, chapter 4 of the EJL pertains to exemptions rather than procedures for enforcement, (2) the purpose of section 704.740 is to provide "the exclusive procedure for determining real property dwelling exemptions" (18 Cal. Law Revision Com. Rep. (1984) p. 101), and (3) division 2, chapter 4 of the EJL does not have independent procedures for enforcement of judgments by writ against dwellings akin to division 2, chapter 3 other than the limited directive set forth in section 704.740. As such, section 704.740 does not trump or negate section 701.680. It is a companion provision that applies in addition to section 701.680 when a dwelling is to be sold.

Given that there is no specified consequence in section 704.740 for failure to obtain a court order, the transgression can only be considered an "irregularity" governed by the all-encompassing remedies in division 2, chapter 3,

which permit a damages remedy against the judgment creditor or sheriff but forbid setting aside a sale to third party purchasers.

Plaintiff next argues that the sheriff's sale was void due to the operation of res judicata principles. He relies on the unlawful detainer court's judgment and, more specifically, that court's reasoning when it denied defendants' posttrial motions to the effect that plaintiff's evidence proved that the Milpitas property was a dwelling. There is no merit to this point.

"The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, 'rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' [Citation.]" (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257 [142 Cal.Rptr. 414, 572 P.2d 28].)

The record here affirmatively shows that defendants did not have a fair adversary hearing contemplated by *Vella*. This follows because the unlawful detainer judge, in denying defendants' posttrial motions, specifically pointed out that the issue whether the Milpitas property was a dwelling was *not* tried. Given that the issue was not tried, defendants never had *any* adversary hearing, let alone a fair one. What is more, however, is that the judge then effectively decided the case against defendants on the very issue that was not tried by giving credit to plaintiff's evidence (that was presumably introduced for nondwelling purposes since there was no dwelling issue) while implicitly denying defendants the opportunity to offer contrary evidence and argument to the jury. That defendants were the victims of unfairness from this is an understatement.

Plaintiff also makes an unfocussed, unsupported argument that his due process rights were transgressed by the execution sale because he had no notice and there was no court order. "[T]he current decisional law has rejected attacks made in the constitutional context against post-judgment execution procedures." (*Wyshak v. Wyshak* (1977) 70 Cal.App.3d 384, 388 [138 Cal.Rptr. 811].)

Plaintiff finally argues that he sufficiently alleged a cause of action for equitable redemption. We disagree.

Equitable redemption is the right of a judgment debtor to redeem property that was sold at an execution sale for a "grossly inadequate price" where the purchaser is guilty of unfairness or has taken undue advantage. (8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 156, p. 179.) The doctrine, however, is rooted in case law predating the EJL. (See generally

*ibid.*) We question whether equitable redemption has survived post-EJL, at least concerning third party purchasers.

"At one time, the right to redeem following an involuntary sale was widespread. The Code of Civil Procedure formerly specified that nearly all execution sales of real property were subject to a right of redemption. Similarly, various provisions in other codes, when authorizing execution sales for various purposes, stipulated that the property would be sold subject to a right of redemption." (*Yancey v. Fink* (1991) 226 Cal.App.3d 1334, 1346 [277 Cal.Rptr. 415], fns. omitted.) One of the purposes of the EJL was to repeal the right to redeem property sold at execution sales. (*Ibid.*)

The EJL states that *it* governs enforcement of a money judgment by a writ of execution, "[e]xcept as otherwise provided by statute." (§ 699.010.) There is no exception for equitable doctrines. (*Goins v. Board of Pension Commissioners* (1979) 96 Cal.App.3d 1005, 1009 [158 Cal.Rptr. 470] [when a statute contains an exception to a general rule laid down therein, that exception is strictly construed and other exceptions are necessarily excluded].) Moreover, section 701.680 uses the unequivocal words "absolute" and "may not be set aside for any reason." (*Yancey v. Fink, supra,* 226 Cal.App.3d at p. 1351 ["absolute," as used in § 701.680, is synonymous with " 'without a right of redemption' "].) Section 701.680 also specifically protects the judgment debtor in the event of an improper sale by allowing a damages remedy against the judgment creditor or levying officer but not against a third party purchaser. (But see 16 Cal. Law Revision Com. Rep. (1982) pp. 1119–1120 ["the proposed law eliminates the statutory right of redemption ... [but] would not affect the equitable right of a judgment debtor to redeem from a sale at a grossly inadequate price where the purchaser is guilty of unfairness or has taken undue advantage"].)

In any event, plaintiff did not and cannot plead the "unfairness" or "undue advantage" element of an equitable redemption cause of action. This follows because the underlying "unfairness" or "undue advantage" is predicated upon the sale of the Milpitas property without a court order, which, in turn, presupposes that the property was a dwelling. Here, the pleadings establish that the property was not a dwelling.

Plaintiff admitted in his bankruptcy papers that he resided in San Jose at the time of the sheriff's levy against the Milpitas property. He concedes this fact, stating only that he began residing on the Milpitas property in January 1999, well after the October 1997 levy. His claim is simply that the property was a dwelling because of its residential characteristics at the time of the sheriff's sale. This analysis is erroneous.

As we have mentioned, division 2, chapter 4, article 4 of the EJL, within which section 704.740 is found, pertains to the homestead exception. Section 704.710, subdivision (a), defines "dwelling" as "a place where a person resides." Subdivision (c) of this section, in turn, defines "homestead" as "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." "Subdivision (c) is intended to preclude a judgment debtor from moving into a dwelling after creation of a judgment lien or after levy in order to create an exemption." (16 Cal. Law Revison Com. Rep., supra, at p. 1421.)

■ Under this statutory scheme, the only purpose for the section 704.740 court order proceeding is to determine the homestead or "dwelling exemption." Stated another way, the concept of "dwelling" does not exist in isolation and apart from the dwelling exemption. Since plaintiff moved onto the Milpitas property after levy he could not establish a dwelling exemption. The section 704.740 procedure is therefore inapplicable. Accordingly, there was no irregularity in the sale upon which to predicate "unfairness" or "undue advantage" for purposes of equitable redemption.

### DISPOSITION

The judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.