[No. B222885. Second Dist., Div. Two. Nov. 29, 2011.]

ERIK E. LANG, Plaintiff and Appellant, v.
WARREN W. ROCHÉ et al., Defendants and Respondents.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**COUNSEL**

Erik E. Lang, in pro. per., for Plaintiff and Appellant.

Warren W. Roché, in pro. per., and Elena Roché, in pro. per., for Defendants and Respondents.

**OPINION**

**BOREN, P. J.**—Do principles of equity and fairness permit the redemption of property purchased by a judgment creditor at an invalid execution sale, though the statutory scheme characterizes execution sales as "absolute"? The answer is yes. Equitable redemption is available to those whose fundamental rights have been trampled. Citizens may not be dispossessed of their property by a "creditor" executing on a judgment that is void *ab initio* for lack of personal jurisdiction. Deploying a void judgment to seize the property of someone who was never served with the lawsuit violates the constitutional guarantee that no person shall be deprived of property without due process of law.

## FACTS AND PROCEDURAL HISTORY[1]

Feuding former neighbors Erik E. Lang and Warren W. Roché are before this court in propria persona, in the latest installment of their lengthy dispute. In 1977, respondent Roché sold property in Topanga Canyon to appellant Lang and they became next-door neighbors. Mutual animosity and litigation ensued.

In 1995, Roché brought a defamation suit against "Eric Lang." Roché and his attorney represented to the trial court that "Eric Lang" was nowhere to be

[1] The facts are taken from the allegations in the current complaint, and from our opinions in four prior appeals: *Lang v. Roche* (July 27, 2005, B176388) (nonpub. opn.); *Lang v. Roche* (May 16, 2007, B192213) (nonpub. opn.); *Roché v. Lang* (Mar. 9, 2010, B214622) (nonpub. opn.); and *Lang v. Roché* (June 15, 2010, B215804) (nonpub. opn.). We take judicial notice of the prior appeals because they are related prior proceedings leading to the present appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *Taliaferro v. Davis* (1963) 216 Cal.App.2d 398, 401 [31 Cal.Rptr. 164].)

found, although (1) appellant lived within eyesight of Roché; (2) appellant was regularly served at a post office box in prior litigation with Roché; and (3) Roché knew appellant's mailing address since 1977. With the trial court's permission, the summons was served by newspaper publication on "Eric Lang." "Eric Lang" is not appellant's name.

After serving process by publication on "Eric Lange," Roché secured a default judgment for $50,000 against "Eric Lang" in 1996. Eight years later, Roché obtained a writ of execution against appellant Erik Lang. Lang first learned about the default judgment in 2003, as Roché prepared to execute on it. On November 10, 2003, Lang filed a lawsuit against Roché and Roché's attorney, seeking to void the judgment and requesting injunctive relief to prevent Roché from executing on Lang's property.

Lang failed to prevent Roché from executing on the judgment. A sheriff's sale was conducted on November 19, 2003. At the sale, Roché purchased Lang's Topanga Canyon property for $100. There were no other bidders.

This court ruled in favor of Lang in two appeals relating to the default judgment. First, we wrote that Lang may institute an independent action in equity to set aside a default judgment that is based on constitutionally inadequate service of process. If service by publication was wrongly approved based on a misspelling of Lang's name and a false claim that he was nowhere to be found, every judicial act based on the invalid service was void *ab initio* for lack of personal jurisdiction. We concluded that Lang alleged a viable claim for equitable relief from a default judgment obtained in violation of his due process rights.[2] In a second appeal following remand, we found that the trial court improperly demanded that Lang "prove a negative—that he was *not* served—instead of obliging [Roché] to prove that [Lang] was properly served."[3]

The trial court vacated the default judgment in 2008. Roché subsequently served Lang with the summons and complaint. In response, Lang successfully moved to strike the defamation suit as a strategic lawsuit against public participation (SLAPP), and Roché's lawsuit was dismissed. This court affirmed the dismissal of Roché's lawsuit as a SLAPP in 2010. Lang's allegedly defamatory statements about Roché were made in an absolutely privileged communication to a government agency whose function is to investigate and remedy wrongdoing.[4]

In 2009, Lang instituted the present lawsuit against Warren and Elena Roché (collectively, Roché). Lang seeks to quiet title to the real property in

---

[2] *Lang v. Roche, supra,* B176388.
[3] *Lang v. Roche, supra,* B192213.
[4] *Roché v. Lang, supra,* B214622.

Topanga Canyon, which he purchased for $12,000 from Roché in 1977. Lang claims that Roché holds title to the property adversely, without any right to do so. He alleges that Roché obtained title and possession of the property through wrongful conduct, at a grossly inadequate price. Lang seeks a declaration that he has sole title to the property, and that Roché has no right, title or interest in it.

Roché demurred to Lang's complaint, on the ground that it is time-barred and fails to state a claim. Roché does not dispute that he obtained a writ of execution, and Lang's property was sold at a sheriff's sale. However, he argues that a lawsuit to set aside the sheriff's sale must be filed within 90 days after the sale and, since six years have passed, Lang's action is untimely. Lang responds that he has an equitable right to redeem real property sold to a judgment creditor at a grossly inadequate price, where the judgment creditor is guilty of unfairness or has taken undue advantage. Lang points to Roché's unfair acts in securing a default judgment, serving the lawsuit in a way that was calculated to deprive Lang of notice and an opportunity to be heard.

The trial court found that the purpose of Lang's lawsuit is to set aside the sheriff's sale of his property on November 19, 2003. An action to set aside a sheriff's sale for irregularities in the proceedings must be brought within 90 days after the sale. Lang's lawsuit was filed in 2009, years after the 90-day limitations period expired. The court sustained Roché's demurrer without leave to amend, on the ground that Lang's claim is time-barred. The court entered an order of dismissal on February 25, 2010, the same day that Lang filed his notice of appeal.

## DISCUSSION

1. *Appeal and Review*

Appeal lies from the court's judgment in favor of Roché. (Code Civ. Proc., § 904.1, subd. (a)(1).)[5] We review de novo the ruling on the demurrer, exercising our independent judgment to determine whether a cause of action has been stated. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115 [55 Cal.Rptr.2d 276].) The demurrer tests the sufficiency of the plaintiff's claims as a matter of law.

2. *The Enforcement of Judgments Law*

■ In 1982, the Legislature enacted the Enforcement of Judgments Law (EJL). (§ 680.010 et seq.) The EJL is comprehensive in scope. Among other

---

[5] All undesignated statutory references in this opinion are to the Code of Civil Procedure.

things, it addresses the procedures for enforcing judgments by writ of execution. Under the statutory scheme, an execution sale "is absolute and may not be set aside for any reason." (§ 701.680, subd. (a).)[6] If the judgment forming the basis for the sale is subsequently reversed, vacated, or otherwise set aside, the judgment debtor may recover from the judgment creditor the proceeds of the sale, with interest. (§ 701.680, subd. (b).) If the sale "was improper because of irregularities in the proceedings, because the property sold was not subject to execution, or for any other reason," and the purchaser at the sale is the judgment creditor, the judgment debtor may institute an action to set aside the sale. (*Id.*, subd. (c)(1).) An action to set aside the sale must be commenced within 90 days after the sale. (*Ibid.*) In an action to set aside the sale, the judgment debtor "may recover damages caused by the impropriety." (*Id.*, subd. (c)(2).)

State law historically protected a titleholder when the purchaser at a judicial sale was a party to the underlying litigation. Under the statutory scheme in effect before the enactment of the EJL, if the plaintiff in an action purchased the defendant's property at an execution sale, the former owner, after reversal on appeal, could have the sale set aside and be restored to possession. (*Arrow Sand & Gravel, Inc. v. Superior Court* (1985) 38 Cal.3d 884, 888–889 [215 Cal.Rptr. 288, 700 P.2d 1290].)

■ The EJL marked a change in California law. One of the purposes of the EJL was to repeal the statutory right to redeem property sold at execution

---

[6] Section 701.680 provides:

"(a) Except as provided in paragraph (1) of subdivision (c), a sale of property pursuant to this article is absolute and may not be set aside for any reason.

"(b) If the judgment is reversed, vacated, or otherwise set aside, the judgment debtor may recover from the judgment creditor the proceeds of a sale pursuant to the judgment with interest at the rate on money judgments to the extent the proceeds were applied to the satisfaction of the judgment.

"(c) If the sale was improper because of irregularities in the proceedings, because the property sold was not subject to execution, or for any other reason:

"(1) The judgment debtor, or the judgment debtor's successor in interest, may commence an action within 90 days after the date of sale to set aside the sale if the purchaser at the sale is the judgment creditor. Subject to paragraph (2), if the sale is set aside, the judgment of the judgment creditor is revived to reflect the amount that was satisfied from the proceeds of the sale and the judgment creditor is entitled to interest on the amount of the judgment as so revived as if the sale had not been made. Any liens extinguished by the sale of the property are revived and reattach to the property with the same priority and effect as if the sale had not been made.

"(2) The judgment debtor, or the judgment debtor's successor in interest, may recover damages caused by the impropriety. If damages are recovered against the judgment creditor, they shall be offset against the judgment to the extent the judgment is not satisfied. If damages are recovered against the levying officer, they shall be applied to the judgment to the extent the judgment is not satisfied.

"(d) For the purposes of subdivision (c), the purchaser of the property at the sale is not a successor in interest."

sales. (*Gonzalez v. Toews* (2003) 111 Cal.App.4th 977, 983 [4 Cal.Rptr.3d 434]; *Yancey v. Fink* (1991) 226 Cal.App.3d 1334, 1346 [277 Cal.Rptr. 415].) The comprehensive revision of the EJL "completely eliminated the possibility that judicial sales be set aside on reversal of the underlying judgment regardless of the identity of the purchaser." (*Arrow Sand & Gravel, Inc. v. Superior Court, supra*, 38 Cal.3d at p. 890.) Because the EJL offers remedies in the event that the judgment is reversed, vacated, or otherwise set aside, "it is apparent that the Legislature has determined that judicial sales of real property may not be set aside on the basis that the underlying judgment ordering the sale has been reversed." (*Arrow Sand & Gravel, Inc.*, at p. 890.) In short, "By declaring that all execution sales are absolute, the new law necessarily means that none of the property sold is subject to redemption." (*Yancey v. Fink, supra*, 226 Cal.App.3d at p. 1351; see Legis. Com. com., 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 701.680, p. 488 ["Section 701.680 reflects the repeal of the statutory right of redemption after execution sales."].)

### 3. *The Right to Equitable Redemption*

■ Lang contends that the right to *equitable* redemption following an execution sale survives the enactment of the EJL, even if the Legislature abolished the right to *statutory* redemption. "Equitable redemption is the right of a judgment debtor to redeem property that was sold at an execution sale for a 'grossly inadequate price' where the purchaser is guilty of unfairness or has taken undue advantage." (*Gonzalez v. Toews, supra*, 111 Cal.App.4th at p. 982.) Lang seeks to be restored to possession of the Topanga property, which Roché acquired for $100 when he executed on his ill-gotten—and void—judgment against "Eric Lang." Lang maintains that he has equitable rights that the court may enforce because Roché was guilty of unfairness, took undue advantage in securing the judgment by devious means, and paid a grossly inadequate price for the property.

■ The doctrine of equitable redemption is set forth in *Odell v. Cox* (1907) 151 Cal. 70 [90 P. 194] (*Odell*) and *Smith v. Kessler* (1974) 43 Cal.App.3d 26 [117 Cal.Rptr. 470] (*Smith*). In *Odell*, defendant Cox levied on stock owned by plaintiff Odell to satisfy a judgment. Odell received no notice of the levy or the proposed sale, and was ignorant of the proceedings. Cox was the only bidder at the execution sale, offering $1 per share for stock that had a market value of over $100 per share. (*Odell, supra*, 151 Cal. at pp. 71–72.) Months later, Odell learned of the event and convinced the trial court to vacate the sale. The Supreme Court described Cox's bid of $26.50 for property worth $2,000 as "grossly inadequate." (*Id.* at p. 73.) It wrote: "[T]here can be no doubt under the authorities that where, in addition to gross inadequacy of price, the purchaser has, in the language of the United States

supreme court, 'been guilty of any unfairness or has taken any undue advantage,' resulting in such gross inadequacy and consequent injury to the owner of the property, he will be deemed guilty of fraud warranting the interposition of a court of equity in favor of the owner who is himself without fault." (*Id.* at p. 75, quoting *Graffam v. Burgess* (1886) 117 U.S. 180, 192 [29 L.Ed. 839, 6 S.Ct. 686] and *Schroeder v. Young* (1896) 161 U.S. 334, 338–340 [40 L.Ed. 721, 16 S.Ct. 512].)

In *Smith*, the plaintiff was not served with the summons and complaint, and had no notice of the underlying action against her. After obtaining judgment by default, the defendant levied on Smith's real property and purchased it at a sheriff's sale for $990.55. (*Smith, supra*, 42 Cal.App.3d at pp. 28–30.) The applicable statutes required that an action to redeem the property be brought within one year after the sale, but Smith missed the statutory deadline because she learned too late of the sale. The court stated that the one-year limitation period on redemptions "is not a bar to later redemption where equitable considerations call for such relief." (*Id.* at p. 31; see *Webb v. Vercoe* (1927) 201 Cal. 754, 764–765 [258 P. 1099] [statutory limits on redemption do not apply when equity shows an injustice has occurred].) "Here we have a grossly inadequate price and manifest unfairness," because Smith "was in total ignorance of what was happening" and the defendant " 'hoped to acquire a valuable property for a paltry sum by following the forms of law but in defiance of the elemental rules of equity and without a simulacrum of justice.' " (*Smith, supra*, 42 Cal.App.3d at pp. 32–33; see Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2011) ¶¶ 6:722–6:727, pp. 6D-89 to 6D-90 (rev. # 1, 2004) and examples cited therein.)

We have just described long-standing state law on the doctrine of equitable redemption. The question is whether equitable redemption survives the enactment of the EJL. Lang relies on a recommendation from the California Law Revision Commission (the CLR Commission) to support his contention that equitable redemption still exists as a viable claim. The CLR Commission acknowledges that the EJL "eliminates the statutory right of redemption from judicial sales . . . ." (1982 Creditor's Remedies Legislation Report, Recommendation Relating to Enforcement of Judgments Law (Sept. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 1119.) However, elimination of the statutory redemption right "*would not affect the equitable right of a judgment debtor to redeem from a sale at a grossly inadequate price where the purchaser is guilty of unfairness or has taken undue advantage.*" (*Id.* at pp. 1119–1120, italics added.) The CLR Commission cites the *Odell* and

*Smith* cases in support of this statement. (16 Cal. Law Revision Com. Rep., *supra*, at p. 1120, fn. 406.)[7]

What weight should we give the statements of the CLR Commission regarding the continuing availability of the right to equitable redemption? The legislative history of the EJL underlines the significance of the CLR Commission's role in the enactment of the EJL.[8] An Assembly Office of Research memorandum regarding Assembly Bill No. 707 (1981–1982 Reg. Sess.) states, "This bill represents the proposal by the California Law Revision Commission to revise and clarify judgment law." A memorandum regarding Assembly Bill No. 707 from the Senate Committee on Judiciary cites the "Source" of the EJL as the CLR Commission, and notes that the CLR Commission "has prepared a report which it wishes the Committee to adopt as the Committee's comments." (Sen. Com. on Judiciary, Memorandum regarding Assem. Bill No. 707 (1981–1982 Reg. Sess.) pp. 1, 21.) The courts accept that the Legislature adopted the EJL based on the recommendations of the CLR Commission. (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2008) 168 Cal.App.4th 185, 192 [85 Cal.Rptr.3d 350]; *Grayson Services, Inc. v. Wells Fargo Bank* (2011) 199 Cal.App.4th 563, 569 [131 Cal.Rptr.3d 789].)

The Senate Committee on Judiciary did, in fact, adopt the CLR Commission report, stating that its contents "reflect the intent of the Senate Committee on Judiciary in approving the various provisions of Assembly Bills Nos. 707 and 798." (Rep. of Sen. Com. on Judiciary on Assem. Bills Nos. 707 (1981–1982 Reg. Sess.) and 798 (1981–1982 Reg. Sess.) p. 1.) The 1982 Legislative Committee Comments—Assembly acknowledge that "The elimination of the statutory right to redeem after a sale pursuant to this article does not affect rights to redeem afforded by other law." (16B West's Ann. Code Civ. Proc., *supra*, foll. § 701.680, p. 488.) The legislative committee comments list various statutes as examples, but do not specifically mention preexisting law

---

[7] In an earlier version of its report, the CLR Commission used precisely the same language and the same citations regarding the continuing right to equitable redemption. (Tentative Recommendation Relating to Enforcement of Judgments (Oct. 1980) 15 Cal. Law Revision Com. Rep. (1980) pp. 2116–2117.)

[8] After giving notice to the parties, we take judicial notice of the legislative history of Assembly Bill No. 707 (1981–1982 Reg. Sess.), the EJL legislation, to ascertain its reasonable meaning. (Evid. Code, §§ 452, 455, 459; *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 920 [129 Cal.Rptr.2d 811, 62 P.3d 54].) That history includes committee reports and CLR Commission recommendations. (*SBAM Partners, LLC v. Wang* (2008) 164 Cal.App.4th 903, 909–912 [79 Cal.Rptr.3d 752].)

regarding equitable redemption.[9] The CLR Commission report makes clear that equitable redemption survives the enactment of the EJL.

The EJL refers to a "judgment creditor" and a "judgment debtor"— meaning a plaintiff who legitimately won a judgment and a defendant who knowingly lost a case. The statutory scheme presumes that the judgment debtor whose property is sold at an execution sale was properly served with the summons and complaint; participated in the litigation or knowingly defaulted by failing to answer or appear; and was aware of the adverse judgment. A person who was never served with the summons and complaint, and is ignorant of the proceedings, resulting in a judgment that is void *ab initio* for lack of personal jurisdiction, is not a "judgment debtor," because there is no enforceable judgment. Likewise, a plaintiff who executes on a judgment obtained by nefarious means, in violation of federal and state due process guarantees, cannot properly be termed a "judgment creditor." If a plaintiff can file an unmeritorious lawsuit against "John Jones," deceive the court into ordering service by publication against "John Jones," obtain a default judgment against "John Jones," then execute on the property of the innocent, unknowing, and unserved "Jon Jones," our system of justice would be subverted. Yet that is precisely what happened in the case at bench.

■ We believe that the "absolute" bar to redemption in section 701.680 of the EJL does not apply to execution on a judgment that is void *ab initio* for lack of personal jurisdiction over the defendant. In such cases, courts must be able to apply principles of equity. A citizen who was never served with a lawsuit—and was thereby deprived of notice and an opportunity to defend—may not lose his or her property permanently at an invalid execution sale based on a void judgment. Though the word "absolute" seems to brook no exceptions, we cannot apply a statute as written when it "leads to an absurd result contrary to the legislative intent." (*Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 72 [99 Cal.Rptr.3d 97].)

---

[9] In dicta, one court stated that "[t]here is no exception for equitable doctrines" in the EJL, "at least concerning third party purchasers." (*Gonzalez v. Toews, supra,* 111 Cal.App.4th at p. 983.) In that case, Gonzalez was sued by his mortgage company and a valid judgment was obtained against him, which formed the basis of a writ of execution under the EJL. The property was sold by the sheriff to a third party purchaser. The only issue presented was whether "the sheriff's sale was void because the parcel could only be sold via court order because it contained a dwelling" under the homestead exemption to the EJL. (111 Cal.App.4th at pp. 979–980.) The court did not need to reach the equitable redemption issue because it found that the property being levied upon "was not a dwelling." (*Id.* at p. 983.) The *Gonzalez* court was not confronted with a due process violation arising from a fundamental lack of jurisdiction over the person whose property was being sold at auction to a purported judgment creditor who wrongfully obtained the judgment. *Gonzalez* is distinguishable from our case.

The burden cannot be placed on an innocent citizen to timely assert statutory rights afforded by the EJL, when a void judgment underlies the purported execution sale. At best, section 701.680 allows a judgment debtor to recover the proceeds of a sale of property, after the judgment is reversed, vacated, or otherwise set aside, or damages if there were "irregularities in the proceedings." (§ 701.680, subds. (b)–(c)(1).) Giving a wronged individual the proceeds of an invalid execution sale (in this case, $100) or money damages is not an adequate remedy for a due process violation. Only the return of the innocent individual's property satisfies the constitutional guarantee that no state may "deprive any person of life, liberty, or property, without due process of law." (U.S. Const., 14th Amend.; see Cal. Const., art. I, § 7, subd. (a).)

### 4. *Lang Has a Right to Equitable Redemption*

Lang asserts that Roché acted improperly and inequitably at every turn. Roché was guilty of unfairness by serving the summons in a manner that violated constitutional due process guarantees. He sued Lang under the wrong name, and told the court that "Eric Lang" was nowhere to be found even though *Erik* Lang lived next door. Based on this misrepresentation, Roché received permission to serve process by publication under the wrong name. The faulty service by publication led to the default judgment and to the writ of execution on appellant's property, even though Roché's lawsuit and the judgment were against someone named "Eric Lang."

The trial court has already found that Roché's default judgment was a nullity for lack of fundamental, personal jurisdiction over Lang. The judgment was subject to collateral attack at any time, even after the execution sale.[10] (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 [16 Cal.Rptr.3d 76, 93 P.3d 1020]; *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538 [66 Cal.Rptr.3d 175].) Roché obtained the default judgment by extrinsic fraud committed in connection with his application for an order for service by publication. (*Carr v. Kamins* (2007) 151 Cal.App.4th 929, 933 [60 Cal.Rptr.3d 196].) All actions taken pursuant to the void judgment—including the writ of execution and the execution sale—had no legal force or effect. (*Ibid.* ["An order after judgment that gives effect to a judgment that is void on its face is itself void . . . ."].)

Roché took undue advantage of the court system, which trusts litigants and their attorneys to be honest and forthcoming about the identities of the defendants they are suing. To compound the insult, Roché's defamation action was a meritless SLAPP brought in violation of Lang's First Amendment

---

[10] *Lang v. Roche, supra*, B176388, and *Lang v. Roche, supra*, B192213.

right to petition the government for redress of grievances.[11] Finally, after all of this unfairness and wrongdoing, Roché purchased Lang's property at the execution sale for the grossly inadequate price of $100.

There can be no doubt that a terrible miscarriage of justice occurred in this case. If ever a case demanded application of the legal maxim "No one can take advantage of his own wrong," this would be the case. (Civ. Code, § 3517.) Simply put, Roché misused our state court system to seize his neighbor's land. As a matter of law, Roché has no defense to this lawsuit, the underlying facts of which are res judicata due to the prior litigation leading up to this appeal. (See fn. 1, *ante*.) We remand the case to the trial court, and direct the court to enter a judgment in favor of Erik Lang, to transfer title to the property to Lang, and to declare that Roché has no right, title or interest in the property.

## DISPOSITION

The judgment is reversed. The case is remanded to the trial court with directions to enter judgment in favor of Erik E. Lang. Lang is entitled to recover his costs on appeal from respondents Warren and Elena Roché.

Ashmann-Gerst, J., and Chavez, J., concurred.

A petition for a rehearing was denied December 21, 2011.

---

[11] *Roché v. Lang, supra*, B214622.