Filed 11/30/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| YUNG-SHEN STEVEN LEE, | |
| Cross-complainant and Respondent, | G051838 |
| v. | (Super. Ct. No. 30-2009-00271288) |
| HOWARD RICH, | O P I N I O N |
| Cross-defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Corey S. Cramin, Judge.  Reversed.

Law Offices of Gary P. Kast and Gary P. Kast for Cross-defendant and Appellant.

Oswald & Yap, Fitzgerald Yap Kreditor and Andrew H. Do for Cross-complainant and Respondent.

## INTRODUCTION

Howard Rich purchased a single-family residence at an execution sale conducted to satisfy a judgment against Yung-Shen Steven Lee. Rich was a third party purchaser; the plaintiff and judgment creditor was Spyglass Hill Community Association (the HOA), which managed the common interest development of which the residence was a part. After the sale, the trial court granted Lee's motion to vacate the judgment on the ground it had been obtained by the HOA through fraud. Soon thereafter, the court granted Lee's motion for restitution and cancelled the sheriff's deed to Rich.

We reverse the order granting Lee's motion for restitution and cancellation of the sheriff's deed of sale. Code of Civil Procedure section 701.680, subdivision (a) (section 701.680(a)) unequivocally states that an execution sale is "absolute and shall not be set aside for any reason." Because Rich was not the judgment creditor, the remedies available for Lee, the judgment debtor, are recovery of the proceeds of the sale under Code of Civil Procedure section 701.680, subdivision (b) (section 701.680(b)), or to seek equitable redemption. Lee is not, however, entitled to equitable redemption because Rich was not guilty of unfairness, and did not manipulate the system or take undue advantage, and the record shows the property was not sold for a grossly inadequate price. The record demonstrates, to the contrary, that Lee sought to manipulate the system.

## RELEVANT FACTS AND PROCEDURAL HISTORY

As Rich points out, most of the factual assertions made by Lee in the respondent's brief are not supported by citations to the record. California Rules of Court, rule 8.204(a)(1)(C) states an appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (See *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 ["The rule applies wherever a reference to a matter in the record appears in a brief."].) We

2

decline to consider those passages of the respondent's brief that do not comply with this rule. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195.)

In 1991, Lee purchased a single-family home in Corona del Mar (the property). The property is part of a common interest development formed pursuant to the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.). The common interest development is managed by the HOA, which was established pursuant to a declaration of covenants, conditions, and restrictions.

In April 2007, Lee ceased paying the HOA assessments. Over the next two years, the HOA sent Lee notices of delinquency, intent to record a lien, and lien recordation. There is no dispute that Lee received those notices. As of May 2009, the amount that Lee owed to the HOA for delinquent assessments, late charges, collection costs, and attorney fees was $7,955.50.

In May 2009, the HOA filed a lawsuit against Lee for, among other things, foreclosure of the assessment lien. Thereafter, attempts were made to serve process on Lee by notice and acknowledgment, and some 24 attempts at personal service were made from June 2 through October 26, 2009. In some instances, Lee refused to acknowledge he was at home and refused to open or answer the door. In November 2009, the HOA filed an ex parte application for publication of summons, which included a declaration from a registered process server.

In June 2010, the HOA obtained, by default, a judgment of foreclosure of the assessment lien against Lee. The notice of entry of judgment was served on Lee by mail.

Lee had a history of avoiding service of process. In an earlier lawsuit brought by Lee's neighbors, Powell Thurston and Karen Thurston (the Thurstons), Lee avoided service and failed to appear in court. In 2005, the Thurstons tried to contact Lee about a home construction project. The Thurstons attempted to deliver plans to Lee by hand delivery and certified mail, but were unsuccessful. The Thurstons attempted to

3

deliver the plans to Lee by certified mail to his post office box, but they were always returned as refused and unopened. Once the HOA approved the construction project and work started, Lee notified the HOA that he objected. Lee refused to accept the plans if sent by certified mail and said he would arrange to go to the HOA's office to view them. He never did so.

Based on the default judgment the HOA had obtained against Lee, a writ of sale issued in October 2010. In June 2011, a sheriff's deputy posted a notice of sheriff's sale under foreclosure on the front door of the property and outside the Orange County Sheriff's Office. The notice advised that the property would be sold at auction to the highest bidder on July 14, 2011.

Rich learned of the sale about three weeks before the scheduled sale date by obtaining a copy of the notice of sale posted outside of the Orange County Sheriff's Office. He and four other bidders attended the sale on July 14. The bidding opened at the amount of the judgment ($19,578.32) and overbids increased in $5,000 increments. Bidding continued until Rich made a bid of $210,000. Nobody outbid him, and the property was sold to him for that amount. Rich immediately paid the required 10 percent deposit by cashier's check and paid the balance at the end of the three-month redemption period. The property was subject to tax liens and other encumbrances totaling $233,500.

In November 2011, after the statutory redemption period elapsed with no action by Lee, Rich received a sheriff's deed to the property. Rich filed an unlawful detainer action, but Lee did not respond to attempts at service and the trial court authorized service by posting on the premises. Lee never objected to service of the unlawful detainer complaint and never responded to it. Rich obtained an unlawful detainer judgment by default against Lee, who had vacated the property after destroying portions of it.

4

In February 2012, Lee filed a motion to set aside and vacate the default judgment obtained by the HOA. Lee argued, in essence, that he did not receive actual notice of the HOA's lawsuit because summons was never mailed to his post office box address.[1] The HOA opposed the motion. Lee and the HOA submitted declarations and evidence to support their respective positions. Rich was not served with the motion.

On March 8, 2012, the trial court granted Lee's motion to set aside and vacate the judgment, ordered the judgment against Lee vacated, and granted him leave to answer. Lee filed his answer and a cross-complaint against the HOA the next day.

On March 23, 2012, Lee filed an amended cross-complaint against the HOA, Rich, and the Orange County Sheriff. The only recovery sought by Lee was restitution of the amount of the judgment ($19,578.32).

On March 27, 2012, Lee filed his motion for restitution and to cancel the sheriff's deed. The motion sought restitution of $19,578.32 from the HOA and cancellation of the sheriff's deed issued to Rich. Rich made his first formal appearance in the action by opposing Lee's motion. The HOA also filed opposition to Lee's motion.

On April 17, 2012, Rich filed a motion for reconsideration of the order granting Lee's motion to set aside and vacate the default judgment. Two days later, the trial court granted Lee's motion for restitution and cancellation of the sheriff's deed of sale. The court ordered that the sheriff's deed issued to Rich be cancelled as "void *ab initio*" and that restitution be made to Rich. On May 3, 2012, the trial court denied Rich's motion for reconsideration as untimely.

---

[1] Lee submitted several documents reflecting his post office box address. These documents were dated and/or mailed between November 2007 and November 2008, and in 2011. Service on Lee was attempted from June through October 2009, during a gap in the date of those documents. Service on Lee by mail was attempted in July 2009, and service addressed to his street address was returned with the stamp "Unable to Forward [¶] No Forward Order on File."

On May 7, 2012, Rich filed a "Cross-complaint to Amended Cross-complaint" asserting a cause of action for quiet title against Lee. Rich's cross-complaint alleged, as the basis for title, the sheriff's certificate of sale of real property and the sheriff's deed of sale. Rich contended that under section 701.680(a), his purchase of the property at the sheriff's sale was "absolute and may not be set aside for any reason."

Rich appealed from the order denying his motion for reconsideration and the order granting Lee's motion for restitution and cancellation of the sheriff's deed of sale. We dismissed the appeal for lack of jurisdiction because Rich's cross-complaint was pending. (*Lee v. Rich* (July 19, 2013, G047047) [nonpub. opn.].)

In 2015, the HOA and Lee entered into a stipulated judgment and Rich dismissed his cross-complaint without prejudice. Rich then filed another notice of appeal to challenge the order granting Lee's motion for restitution and to cancel the sheriff's deed.

## DISCUSSION

## I.

### Rich Was an Indispensable Party to Lee's Motion for Relief from Default Judgment.

Lee filed his motion to set aside and vacate the default judgment in February 2012, after Rich had purchased the property at the execution sale and after Lee had been served with Rich's unlawful detainer action. Lee did not, however, serve Rich with that motion. Rich argues he was an indispensable party to the motion to set aside and vacate the default judgment.

An indispensable party is defined as follows: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence

6

complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party." (Code Civ. Proc., § 389, subd. (a).) An indispensable party is not bound by a judgment in an action in which the indispensable party was not joined and may collaterally attack the judgment. (*Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 693.)

Rich was an indispensable party to the motion to set aside and vacate the default judgment because the potential effect of the motion would be to void Rich's title. (Cf. *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 668 ["When a party seeks to set aside and vacate a trustee's sale in a foreclosure proceeding, there can be no doubt that the parties to the sale transaction are indispensible parties."].) Rich was a bona fide third party purchaser of the property at an execution sale. The motion to set aside and vacate the default judgment impaired and impeded Rich's ability to protect his interest in the property purchased. Because Rich was not made a party to that motion, he could protect his interest only by a motion for reconsideration or by opposing the motion to cancel the sheriff's deed. The motion for reconsideration was denied as untimely, and the issue of proper service on Lee had been resolved before Rich filed opposition to the motion to cancel the sheriff's deed.

Because Rich was an indispensable party to Lee's motion to set aside and vacate the default judgment, and Rich was not served with that motion, he is not bound by the order granting it. As to Rich, therefore, the default judgment was not void.

7

## II.

### Under Section 701.680(a) the Sale of the Property to Rich Was Absolute and May Not Be Set Aside for Any Reason.

In 1982, the Legislature enacted the Enforcement of Judgments Law (EJL), Code of Civil Procedure section 680.010 et seq.  Comprehensive in scope, the EJL addresses, among other things, the procedure for enforcing judgments by writ of execution.  Section 701.680(a), which is part of the EJL, unequivocally states:  "Except as provided in paragraph (1) of subdivision (c), a sale of property pursuant to this article is absolute and *shall not be set aside for any reason*."  (Italics added.)  If the sale was improper due to irregularities in the proceedings or because the property was not subject to execution, then, within 90 days of the sale, the judgment debtor may commence an action to set aside the sale "if the purchaser at the sale is the judgment creditor."  (Code Civ. Proc., § 701.680, subd. (c)(1).)

Section 701.680(b) states:  "If the judgment is reversed, vacated, or otherwise set aside, the judgment debtor may recover from the judgment creditor the proceeds of a sale pursuant to the judgment with interest at the rate on money judgments to the extent the proceeds were applied to the satisfaction of the judgment."

Few statutory schemes are clearer.  "It is immediately apparent from an examination of the statutory scheme and words used that (1) division 2, chapter 3, of the EJL is all-encompassing—it deals with procedures for enforcement of judgments by writ without exception and (2) [Code of Civil Procedure] section 701.680 is crystal clear—it states that execution sales are absolute and may not be set aside 'for any reason' unless the judgment creditor was the purchaser."  (*Gonzalez v. Toews* (2003) 111 Cal.App.4th 977, 981 (*Gonzalez*).)

Section 701.680(b) does not make an exception for a judgment declared void:  An execution sale is "absolute and shall not be set aside for any reason"

8

(§ 701.680(a)) even if the underlying judgment is *vacated*, or set aside (§ 701.680(b)), which would be the case with a void judgment.

The judgment debtor is not left without a remedy. If the judgment creditor was the purchaser of the property, then the judgment debtor may proceed under Code of Civil Procedure section 701.680, subdivision (c)(1). The judgment debtor may commence an action to set aside the sale only if the sale (not the underlying judgment) was improper and only if the purchaser at the sale was the judgment creditor. Rich was not the judgment creditor.

The EJL "marked a change in California law." (*Lang v. Roché* (2011) 201 Cal.App.4th 254, 260 (*Lang*). Before enactment of the EJL, the judgment debtor, after reversal of the underlying judgment on appeal, could have an execution sale set aside and be restored to possession if the plaintiff/judgment creditor was the purchaser. (*Lang*, *supra*, at p. 260.) "One of the purposes of the EJL was to repeal the statutory right to redeem property sold at execution sales. [Citations.] The comprehensive revision of the EJL 'completely eliminated the possibility that judicial sales be set aside on reversal of the underlying judgment regardless of the identity of the purchaser.' [Citation.] Because the EJL offers remedies in the event that the judgment is reversed, vacated, or otherwise set aside, 'it is apparent that the Legislature has determined that judicial sales of real property may not be set aside on the basis that the underlying judgment ordering the sale has been reversed.' [Citation.]" (*Id.* at pp. 260-261.)

Even though the judgment against Lee was vacated, the execution sale of the property to Rich is "absolute and shall not be set aside for any reason" under section 701.680(a). Code of Civil Procedure section 701.680, subdivision (c)(1) did not permit Lee to seek to set aside the sale, even assuming irregularities in the sale proceedings, because Rich was not the judgment creditor. (*Amalgamated Bank v. Superior Court* (2007) 149 Cal.App.4th 1003, 1018 ["By statute, only the judgment

9

debtor can set aside the sale for irregularity and only where the purchaser was the judgment creditor."].)

Lee does not argue that section 701.680(a) is unconstitutional on its face or that it would be unconstitutional if applied to uphold the execution sale of the property to Rich. The word "unconstitutional" does not appear in Lee's respondent's brief. Lee contends, based on the language of section 701.680(a), that the trial court did not err by ordering the sheriff's deed cancelled.


## III.

### Lee Does Not Have a Right of Equitable Redemption.

Relying on *Lang, supra,* 201 Cal.App.4th 254, Lee argues he could redeem the property because the HOA obtained the default judgment by extrinsic fraud. We note that in the respondent's brief Lee did not supply citations to the record to support his claim of extrinsic fraud, except in support of the assertion that, "[Sarah] Reed [(the HOA's attorney)] did not exhibit the result of that on-line search until she was forced to disclose years later after the fact in her declaration dated February 24, 2012." The record citation provided is to a printout of the online records search. Thus, Lee had not shown extrinsic fraud in obtaining the default judgment.

"Equitable redemption is the right of a judgment debtor to redeem property that was sold at an execution sale for a 'grossly inadequate price' where the purchaser is guilty of unfairness or has taken undue advantage." (*Gonzalez, supra,* 111 Cal.App.4th at p. 982.) Pre-EJL cases applying equitable redemption did so when the judgment creditor was the purchaser of the property sold by execution sale. (*Odell v. Cox* (1907) 151 Cal. 70 [judgment creditor was only bidder at execution sale]; *Smith v. Kessler* (1974) 43 Cal.App.3d 26 [judgment creditor purchased real property at execution sale for grossly inadequate price].) Because the doctrine of equitable redemption "is rooted in case law predating the EJL," the *Gonzalez* court stated, "[w]e question whether equitable

10

redemption has survived post-EJL, at least concerning third party purchasers."
(*Gonzalez, supra,* at pp. 982-983.)

In *Lang*, *supra,* 201 Cal.App.4th 254, the Court of Appeal held that a form of equitable redemption did survive the EJL but, as we shall explain, *only* when the judgment creditor purchased the property after obtaining the underlying judgment by fraud. The facts of *Lang* bear this out. Erik E. Lang and Warren W. Roché were hostile and litigious neighbors. (*Lang*, *supra,* at p. 257.) Roché sued Lang for defamation and fraudulently obtained an order permitting service of process by publication. (*Id.* at pp. 257-258.) After service of process by publication, Roché secured a default judgment of $50,000 against Lang and obtained a writ of execution against Lang's real property. (*Id.* at p. 258.) Lang learned of the default judgment but was unable to stop the sale, at which Roché purchased the property for only $100. (*Ibid.*) Lang was able to have the default judgment vacated, successfully moved for dismissal of Roché's lawsuit, and brought his own lawsuit to set aside the sale and quiet title to the property. (*Id.* at pp. 258-259.) The trial court sustained Roché's demurrer to Lang's lawsuit on the ground it was not brought within the 90-day period for setting aside an execution sale prescribed by Code of Civil Procedure section 701.680, subdivision (c)(1). (*Lang*, *supra*, at p. 259.)

Reversing, the Court of Appeal concluded that equitable redemption survived enactment of the EJL. (*Lang*, *supra*, 201 Cal.App.4th at pp. 262-264.) The court relied upon a report on the EJL by the California Law Revision Commission, which stated that elimination of the statutory redemption right "'*would not affect the equitable right of a judgment debtor to redeem from a sale at a grossly inadequate price where the purchaser is guilty of unfairness or has taken undue advantage.*'" (*Lang*, *supra*, at p. 262.) Based on the report, the *Lang* court found that "[t]he [California Law Revision] Commission report makes clear that equitable redemption survives the enactment of the EJL." (*Id.* at p. 264.)

11

The *Lang* court reasoned that the EJL "presumes" the judgment debtor was properly served with summons and complaint, and "[a] person who was never served with the summons and complaint, and is ignorant of the proceedings, resulting in a judgment that is void *ab initio* for lack of personal jurisdiction, is not a 'judgment debtor,' because there is no enforceable judgment." (*Lang*, *supra*, 201 Cal.App.4th at p. 264.) Thus, the court stated: "We believe that the 'absolute' bar to redemption in [Code of Civil Procedure] section 701.680 of the EJL does not apply to execution on a judgment that is void *ab initio* for lack of personal jurisdiction over the defendant. In such cases, courts must be able to apply principles of equity. A citizen who was never served with a lawsuit—and was thereby deprived of notice and an opportunity to defend—may not lose his or her property permanently at an invalid execution sale based on a void judgment. Though the word 'absolute' seems to brook no exceptions, we cannot apply a statute as written when it 'leads to an absurd result contrary to the legislative intent.'" (*Ibid.*)

The *Lang* court also concluded Lang had a right to equitable redemption because Roché obtained the default judgment by extrinsic fraud committed in connection with the application for service by publication and purchased Lang's property at the execution sale "for the grossly inadequate price of $100." (*Lang*, *supra*, 201 Cal.App.4th at pp. 265, 266.) The court stated in conclusion: "There can be no doubt that a terrible miscarriage of justice occurred in this case. If ever a case demanded application of the legal maxim 'No one can take advantage of his own wrong,' this would be the case. [Citation.] Simply put, Roché misused our state court system to seize his neighbor's land. As a matter of law, Roché has no defense to this lawsuit, the underlying facts of which are res judicata due to the prior litigation leading up to this appeal." (*Id.* at p. 266.)

To the extent *Lang* holds the EJL does not apply to any judgment deemed void, it is contrary to the Legislature's plain intent expressed in section 701.680(a) and section 701.680(b). "[T]he Legislature has provided that upon payment of the purchase

12

price, a sheriff's sale to a third party is absolute, subject only to the right of redemption, and may not be set aside." (*Amalgamated Bank v. Superior Court*, *supra*, 149 Cal.App.4th at p. 1018.) When, as is the case here, a judgment is reversed, vacated, or set aside, section 701.680(b) limits the judgment debtor's remedy to an action against the judgment creditor. The Legislature has considered and balanced the rights of judgment debtors and third party purchasers and has decided the rights of third party purchasers are absolute.

As *Lang* explained, equitable redemption survived enactment of the EJL. Code of Civil Procedure section 701.680, subdivision (e) states: "This section does not affect, limit, or eliminate a judgment debtor's equitable right of redemption." In *Lang*, Roché obtained the default judgment by fraud and purchased the property at the sheriff's sale for an inadequate price. Here, Rich did not secure the default judgment, he is not the judgment creditor, and he did not manipulate the legal system to buy the property at the sheriff's sale. The purchase price of $210,000 bid by Rich was not *grossly* inadequate such as the $100 price found inadequate in *Lang*. Because the property was subject to tax liens and other encumbrances totaling $233,500, Rich in effect paid $433,500 for the property. The equities favor Rich, not Lee.

Rich did nothing fraudulent or oppressive to purchase the property. He learned of the sheriff's sale several weeks before the scheduled date by obtaining a copy of the notice of sale posted outside of the Orange County Sheriff's Office. There is no evidence he was connected with the HOA in any way or knew how the judgment was obtained. Five bidders, including Rich, appeared at the sale and engaged in competitive bidding. Unlike Roché, Rich did not take advantage of his own wrong; he was not "guilty of unfairness" and had not "taken undue advantage" (*Lang*, *supra*, 201 Cal.App.4th at p. 262, italics omitted.) The record shows, to the contrary, that Lee manipulated the system, avoided service, knew of the default judgment and foreclosure

13

sale, avoided service of Rich's unlawful detainer complaint, and damaged the property before vacating it.

## DISPOSITION

The order granting Lee's motion for restitution and cancellation of the sheriff's deed of sale is reversed. Appellant shall recover costs incurred on appeal.


FYBEL, J.

I CONCUR:


MOORE, ACTING P. J.

14

**THOMPSON, J.,** Dissenting—I respectfully dissent. "Citizens may not be dispossessed of their property by a 'creditor' executing on a judgment that is void *ab initio* for lack of personal jurisdiction. Deploying a void judgment to seize the property of someone who was never served with the lawsuit violates the constitutional guarantee that no person shall be deprived of property without due process of law." (*Lang v. Roché* (2011) 201 Cal.App.4th 254, 257 (*Lang*).) Therefore, the challenged order must be affirmed.

The trial court found the default judgment was void *ab initio* for lack of fundamental, personal jurisdiction over Lee, because the HOA obtained it by extrinsic fraud in the HOA's application for an order for service by publication. (See *Carr v. Kamins* (2007) 151 Cal.App.4th 929, 933 (*Carr*).) "Accordingly, [Lee's] failure to file an answer to the improperly served complaint did not represent a default. It was error to enter default and beyond the power of the court to do so. The trial court had a legal duty, not merely discretionary power, to vacate the default it had erroneously entered." (*Transamerica Title Ins. Co v. Hendrix* (1995) 34 Cal.App.4th 740, 746.)

What's more, "All actions taken pursuant to the void judgment—including the writ of execution and the execution sale—had no legal force or effect." (*Lang*, *supra*, 201 Cal.App.4th at p. 265; citing *Carr*, *supra*, 151 Cal.App.4th at p. 933. ["An order after judgment that gives effect to a judgment that is void on its face is itself void . . . ."].) Stated differently, there was no judgment for the HOA to execute upon, and the sheriff's deed purporting to transfer title to Rich based upon a nonexistent judgment was a legal nullity. It follows, the trial court also had a legal duty to vacate the default judgment it had erroneously entered, and to cancel the sheriff's deed. (*Ibid.*; Civ. Code, § 3412.)

Under these circumstances the EJL (Code Civ. Proc. § 680.010 et seq.) does not apply. "The EJL refers to a 'judgment creditor' and a 'judgment debtor'— meaning a plaintiff who legitimately won a judgment and a defendant who knowingly lost a case. The statutory scheme presumes that the judgment debtor whose property is sold at an execution sale was properly served with the summons and complaint;

1

participated in the litigation or knowingly defaulted by failing to answer or appear; and was aware of the adverse judgment. A person who was never served with the summons and complaint, and is ignorant of the proceedings, resulting in a judgment that is void *ab initio* for lack of personal jurisdiction, is not a 'judgment debtor,' because there is no enforceable judgment. Likewise, a plaintiff who executes on a judgment obtained by nefarious means, in violation of federal and state due process guarantees, cannot properly be termed a 'judgment creditor.'" (*Lang*, *supra*, 201 Cal.App.4th at p. 264.)

Even if the EJL did apply, it could not trump the constitutional guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." (U.S. Const., 14th Amend.; Cal. Const., art. 1, § 7, subd. (a).) "The California Constitution is 'the supreme law of our state' [citation], subject only to the supremacy of the United States Constitution. (Cal. Const., art. III, § 1.)" (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 250.) It is axiomatic the EJL, including Code of Civil Procedure section 701.680, can only be applied in a manner which is consistent with the California and United States Constitutions.

The majority's notion the default judgment was void as to the HOA but not void as to Rich is legally and factually unsupported and unsupportable. The default judgment was void as to all parties—including Rich—because the trial court had no jurisdiction to issue it in the first instance. It makes no difference that Rich was not served with Lee's motion to set aside and vacate the default and default judgment. Rich never acquired title to the property because the sheriff's deed was a legal nullity. Thus Rich had no interest in the property to protect. And in any event the trial court was required to vacate the default and default judgment it had erroneously entered.

THOMPSON, J.

2