Filed 6/30/15  Royal Crown Funding, Inc. v. Kohn CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROYAL CROWN FUNDING, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SCOTT KOHN, <br><br> Defendant and Appellant. | A140158 <br><br> (Alameda County <br> Super. Ct. No. FG09445054) |

Scott Kohn was the assignee of a money judgment against Sham Asnani and Royal Crown Funding, Inc., a California corporation (RCF-CA).  Kohn obtained a writ of execution and levied upon certain real commercial property (Property) owned by Royal Crown Funding, Inc., a Nevada corporation (RCF-NV).  RCF-NV sued to set aside a sheriff's sale by which Kohn took title to the Property.  After a bench trial, the trial court concluded that RCF-NV is a third party distinct from the judgment debtors in the underlying litigation, but that the sale could not be set aside.  Instead, the trial court entered a judgment against Kohn for $675,000.  Kohn appeals, raising numerous challenges to this judgment.  We agree that the award is barred by the litigation privilege and reverse.

## I. STATUTORY BACKGROUND

"Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable.  In 1982, following the recommendations of the California Law Revision Commission, the Enforcement of Judgments Law (EJL) was enacted.  The

1

EJL . . . is a comprehensive scheme governing the enforcement of all civil judgments in California." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546.)

"The most common method of enforcing a money judgment is to levy on the judgment debtor's property under a writ of execution." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2014) ¶ 6:300, p. 6D-1 (rev. #1, 2014).) "A writ of execution is a court process directed to the levying officer (i.e., sheriff, marshal or constable) of the county where the levy is to be made . . . . The writ requires the levying officer to enforce the money judgment in the manner prescribed by law." (*Id.* at ¶ 6:311, p. 6D-3 (rev. #1, 2014), citing Code Civ. Proc., § 699.520.)[1] "The [EJL also] includes procedures for determining the claims of third persons, i.e., those other than the judgment debtor and creditor. (§ 720.010 et seq.)[2] The purpose of third party claims is to give a quick and effectual remedy to third parties whose property has been levied upon by mistake. [Citation.] [¶] The third party claims procedure is available to a person claiming a superior ownership or possessory right in real property that is subjected to attachment or execution to satisfy a money obligation." (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1329.) "A person making a third-party claim under this chapter shall file the claim with the levying officer, together with two copies of the claim, after levy on the property *but before* the levying officer does any of the following: [¶] (a) Sells the property. [¶] (b) Delivers possession of the property to the creditor. [¶] (c) Pays proceeds of collection to the creditor." (§ 720.120, italics added.) If the third party does so and the judgment creditor does not timely file an undertaking, the levying officer must release the property. (§ 720.170, subd. (a).)

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Section 720.110, subdivision (a), provides, in relevant part: "A third person claiming ownership or the right to possession of property may make a third-party claim under this chapter . . . [w]here real property has been levied upon under a writ of attachment or a writ of execution"

Although a levying officer may not sell the property if a third-party claim is timely filed, "[t]he interest of the third person in the property levied upon is not affected by the third person's failure to file a third-party claim under this chapter." (§ 720.150, subds. (a)(1), (b).) "Alternatives to the third party procedures include a quiet title action or one for declaratory relief. [Citations.] [¶] The third party claim procedures are optional and the third party does not waive a superior interest in the property levied upon by failure to make such a third party claim. [Citations.] This principle is a corollary of the general rule a judgment or levy reaches only the interest of the debtor in the property because a judgment creditor can acquire no greater right in the property levied upon than that of its judgment debtor. [Citations.]" (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc., supra,* 31 Cal.App.4th at pp. 1329–1330.) "The failure to make a [timely] claim does not extinguish [a third party's] rights, but merely bars them from utilizing the summary third party claim procedure." (*Employment Development Dept. v. Union Bank* (1986) 182 Cal.App.3d 542, 545.)

## II. FACTUAL AND PROCEDURAL BACKGROUND

In an underlying sexual harassment case, *Vatsana v. Royal Crown Funding* (Super. Ct. Alameda County, 1999, No. CH 202854-9) (*Vatsana*), a default judgment in the amount of $157,388 was entered against RCF-CA and Sham Asnani on August 19, 1999. The judgment was assigned to Kohn.

On August 15, 2008, Kohn obtained a writ of execution in the amount of $298,483.03—the amount of the *Vatsana* judgment plus accrued interest. On September 8, 2008, a notice of levy was recorded by the Alameda County Sheriff's Office on the Property, located at 29400 Kohoutek Way, #150, Union City, California. The grant deed, recorded on April 25, 2006, showed title to the Property vested in "Royal Crown Funding, Inc., a Nevada corporation." On September 9, 2008, the notice of levy was served on the following persons: (1) the occupants at 29400 Kohoutek Way, #150, Union City, CA 94587; (2) "Royal Crown Funding, Inc."; and (3) Sham Asnani.

On January 28, 2009, a notice of sheriff's sale of real property was issued, setting February 25, 2009, as the date of sale. On February 24, 2009, instead of serving a third

3

party claim of ownership on the Alameda Sheriff (§§ 720.110, 720.120), RCF-NV filed a notice of motion to recall and quash execution and vacate levy in Alameda Superior Court. The hearing was set for March 30, 2009.

On February 25, 2009, the Property was sold to Kohn on a bid of $307,000, which was to be credited against the *Vatsana* judgment. A sheriff's deed was recorded, on March 11, 2009, transferring title to Kohn. Two weeks later, Kohn recorded a quitclaim deed, transferring his interest in the Property to SK Judgment Recovery Services, Inc. (SKJ), an entity owned by Kohn. On March 30, 2009, the Honorable Frank Roesch denied RCF-NV's motion to recall and quash the writ of execution and vacate the levy, holding that the motion was moot since the Property had already been sold.

On April 9, 2009, RCF-NV filed the instant action, which sought to vacate the sheriff's sale and quash the sheriff's deed, and to recall and quash the writ of execution and property levy. In its complaint, RCF-NV alleged that it "is the record owner" of the Property, that its "sole incorporator" and "sole director/trustee" is Yashna Asnani, who was not a named defendant in *Vatsana* and did not have any ownership interest in RCF-CA.[3] RCF-NV further alleged that a writ of execution, notice of levy, and notice of sheriff's sale were issued and the Property was sold to Kohn despite the fact that "there is no legal connection or relationship, successor or otherwise, between [RCF-NV] and [RCF-CA]." RCF-NV also alleged: "[Kohn] . . . improperly levied on real property owned by [RCF-NV], which entity was never named as a defendant in [*Vatsana*] nor was it added as a judgment debtor [in] any post-judgment proceedings." RCF-NV prayed: "1. That the Court vacate the Sheriff's sale on February 25, 2009; and quash the subsequent Sheriff's deed of conveyance to [Kohn]; [¶] 2. That the Court quash and recall the writ of execution and notice of levy . . . ; [¶] 3. For costs of suit herein; [and] [¶] 4. For such other and further relief as the Court deems proper."

---

[3] Because Sham Asnani and Yashna Asnani share the same last name, we hereafter refer to each of them by their first names for purposes of clarity.

4

After RCF-NV filed its complaint, RCF-NV also sought to stay eviction from the Property by filing an application for a temporary restraining order and an order to show cause regarding preliminary injunction. The Honorable Stephen Dombrink denied the application. On June 9, 2009, SKJ filed an unlawful detainer action against RCF-NV. RCF-NV filed an answer on June 17, 2009. SKJ ultimately prevailed on a motion for summary judgment in the unlawful detainer action, confirming its right to possession. SKJ and RCF-NV thereafter executed a stipulated judgment and stay of execution. Per the stipulated judgment, RCF-NV was to make monthly rent payments in exchange for a stay of issuance of a writ of possession pending entry of judgment in the instant action. If RCF-NV were to prevail in the instant action, Kohn was to return all rent paid. Payments were made by another entity owned and operated by Yashna, known first as Royal Crown Bancorp and later as Blue Saphire Investments (California, Inc.).

SKJ executed a deed of trust and assignment of rent against the Property, to secure a loan from Red Tower Funding, Inc. In 2011, foreclosure proceedings were commenced against SKJ. On July 7, 2011, SKJ filed for bankruptcy protection. On October 26, 2011, RCF-NV filed an application for a temporary restraining order and preliminary injunction to stay foreclosure on the Property. The Honorable Gail Brewster Bereola denied the application, reasoning that "there is little likelihood that the Court would restore the property to [RCF-NV] . . . years after the initial sale and after a series of intervening transactions." On discharge of SKJ from bankruptcy, the lender completed foreclosure proceedings. RCF-NV dismissed with prejudice its cross-complaint against the lender.

Kohn and RCF-NV stipulated that RCF-NV's complaint was to be tried to the court on their joint statement of undisputed facts, trial briefs, exhibits, and declarations in lieu of live testimony. The parties also stipulated that "the issue of damages shall be bifurcated and tried at another time should the court find liability." In its trial brief, RCF-NV acknowledged that its complaint sought only to vacate the sheriff's sale and quash the sheriff's deed, but requested a "variance" so that it could seek damages. In his trial

5

brief, Kohn did not argue that a cause of action for damages had not been pleaded. Instead, he argued that such a cause of action was barred by the litigation privilege.

The joint statement of undisputed facts provides that Yashna incorporated RCF-NV on September 9, 2005, in the state of Nevada. On April 25, 2006, a grant deed was recorded for the Property in RCF-NV's name, and was to be mailed to Sham after recording. However, RCF-NV did not become qualified to do business in the State of California until February 28, 2011—almost two years after the instant action was filed. RCF-NV's sole shareholder, officer, and director is Yashna, with whom Sham has a personal relationship. They have represented themselves to be husband and wife and, in 1992, they had a child together.[4] Yashna was also the secretary, chief financial officer, agent for service of process, and director of RCF-CA, which was incorporated on February 23, 1996, and suspended, on February 1, 2001, by the California Franchise Tax Board. Sham was also a former director. On August 20, 1999—the day after the *Vatsana* judgment was entered—Yashna incorporated Royal Crown Bancorp, Inc., which later changed its name to Blue Saphire Investments. Approximately a month after RCF-CA was suspended, Yashna filed a fictitious business name statement for the name "Royal Crown Funding." In a residential loan application executed in 2007, Yashna made no distinction between RCF-CA and RCF-NV when she stated that she had been employed at "Royal Crown Funding" as "CFO Mortgage Lender" for 20 years.

At a posttrial "compliance" hearing, on January 11, 2013, Judge Brewster Bereola found that RCF-NV is not the same entity as RCF-CA or its successor in interest. Judge Brewster Bereola also concluded she could not vacate the sheriff's sale of the Property

---

[4] In December 1999, another judgment, in the amount of $320,000 was entered against Sham and RCF-CA for sexual harassment (*Wilkins v. Royal Crown Funding, Inc.*, Super. Ct. Alameda County, 1999, No. H207764-B). This judgment was also assigned to Kohn. In October 2009, Kohn moved for an order of sale of Yashna's real property in the *Wilkins* matter. The trial court granted the motion and Yashna appealed. The Sixth District Court of Appeal reversed the order holding that the lower court erred in taking judicial notice of the truth of Yashna's statements that she was married and in presuming that the property was community property.

because it had been sold to a third party. However, she also concluded that the Property was "wrongfully sold" and that RCF-NV is entitled to reasonable damages. Conceding that the complaint did not allege a cause of action that would allow the trial court to grant monetary damages, Judge Brewster Bereola granted RCF-NV's request to file a motion to amend.

Thus, in a posttrial brief, RCF-NV filed a motion to amend the complaint, asserting that it should be granted leave to amend a negligence cause of action against Kohn. In his opposition, Kohn argued, among other things, that the evidence presented at trial did not prove negligence and that a negligence cause of action would be barred by the litigation privilege.

At another "compliance" hearing, on June 7, 2013, Judge Brewster Bereola announced her view that she had the equitable power to grant monetary relief based on the prayer of the complaint for "such other and further relief as the Court deems proper." Because she could "exercise [the trial court's] equitable powers in the interest of justice and allow damages," she did not have to make a ruling on RCF-NV's motion to amend, which was deemed moot. Kohn's trial counsel objected to a grant monetary relief without amendment of the complaint. Kohn was given the opportunity to provide further briefing on the issue along with evidence regarding the Property's value.

At the final "compliance" hearing, on August 23, 2013, Judge Brewster Bereola reiterated that she could not vacate the sheriff's sale. However, she relied on an equitable redemption case, *Lang v. Roche* (2011) 201 Cal.App.4th 254 (*Lang*),[5] and stated, "it appears that the parties both agreed that the statute that is implicated is [section 701.680], which is the same statute that is addressed in [*Lang, supra,* 201 Cal.App.4th 254]."[6]

---

[5] "Equitable redemption is the right of a *judgment debtor* to redeem property that was sold at an execution sale for a 'grossly inadequate price' where the purchaser is guilty of unfairness or has taken undue advantage." (*Gonzalez v. Toews* (2003) 111 Cal.App.4th 977, 982, italics added.)

[6] Section 701.680 currently provides: "(a) Except as provided in paragraph (1) of subdivision (c), a sale of property pursuant to this article is absolute and shall not be set aside for any reason. [¶] (b) *If the judgment is reversed, vacated, or otherwise set aside,*

7

Judge Brewster Bereola also observed: "[N]ot being a party to that underlying action, [RCF-NV was] not a judgment debtor. The property was wrongfully taken, and [Kohn] has been unjustly enriched. And yet there are arguments that the Court can do nothing and that [RCF-NV] has just lost [its] property. Period. That is disturbing to the Court." The trial court determined that Kohn's request for a statement of decision was not timely, pursuant to section 632, because it was not made "within ten days of the trial."

The trial court entered judgment in RCV-NV's favor, awarding $675,000 in monetary damages. The judgment provides: "1. [RCF-NV] is not the same legal entity as [RCF-CA]. [¶] 2. [Kohn] wrongfully levied on the real property of [RCF-NV]." Kohn filed a timely notice of appeal from the judgment.

### III. DISCUSSION

On appeal, Kohn contends that the trial court's judgment must be reversed because (1) the court refused to provide a statement of decision; (2) substantial evidence does not support the court's finding on RCF-NV's successor liability; and (3) Kohn's due process

---

*the judgment debtor* may recover from the judgment creditor the proceeds of a sale pursuant to the judgment with interest at the rate on money judgments to the extent the proceeds were applied to the satisfaction of the judgment. [¶] (c) If the sale was improper because of irregularities in the proceedings, *because the property sold was not subject to execution*, or for any other reason: [¶] (1) The *judgment debtor*, or the *judgment debtor's successor* in interest, may commence an action within 90 days after the date of sale to set aside the sale if the purchaser at the sale is the judgment creditor. Subject to paragraph (2), if the sale is set aside, the judgment of the judgment creditor is revived to reflect the amount that was satisfied from the proceeds of the sale and the judgment creditor is entitled to interest on the amount of the judgment as so revived as if the sale had not been made. Any liens extinguished by the sale of the property are revived and reattach to the property with the same priority and effect as if the sale had not been made. [¶] (2) *The judgment debtor, or the judgment debtor's successor in interest, may recover damages caused by the impropriety.* If damages are recovered against the judgment creditor, they shall be offset against the judgment to the extent the judgment is not satisfied. If damages are recovered against the levying officer, they shall be applied to the judgment to the extent the judgment is not satisfied. [¶] (d) For the purposes of subdivision (c), the purchaser of the property at the sale is not a successor in interest. [¶] (e) This section does not affect, limit, or eliminate a judgment debtor's equitable right of redemption." (Italics added.)

8

rights were violated by the court's award of monetary relief not requested in RCF-NV's complaint. In the alternative, Kohn contends that the damages award should be reversed because such an award is barred by the litigation privilege, the trial court misplaced its reliance on *Lang, supra,* 201 Cal.App.4th 254, and, if RCF-NV is not the judgment debtor, then it does not have standing to assert a claim for damages under section 701.680. We agree with Kohn that the trial court's award of damages is barred by the litigation privilege and accordingly need not address his last two arguments.

A.      *Statement of Decision and Standard of Review*

Initially, we must address Kohn's argument that reversal is necessary because the trial court improperly refused to provide a statement of decision. "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision. *The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision*. . . . [¶] The statement of decision shall be in writing . . . however, when the trial is concluded within one calendar day or in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties." (§ 632, italics added.)

"The trial court has a mandatory duty to provide a statement of decision when properly requested. [Citation.] . . . Normally, the court's failure to provide a properly requested statement of decision results in a remand ordering the court to issue such a statement. [Citation.] However, [when] there are additional reasons why the judgment

9

should be reversed . . . a remand solely to prepare a statement of decision would . . . be an idle act." (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1397–1398.)[7]

Kohn first requested a statement of decision in his opposition to RCF-NV's motion to amend, which was filed on March 11, 2013. His request stated only, "KOHN respectfully requests a statement of decision pursuant to . . . [s]ection 632." In his supplemental briefing filed on July 31, 2013, Kohn again renewed his request for a statement of decision in precisely the same language.

At the June 7, 2013 hearing, Judge Brewster Bereola indicated that a request for statement of decision was premature because her decision was not yet final. Specifically, the trial court said: "There can't be a statement of decision until I make a final verdict in this case, and I think insofar as whatever the tentative verdict is, we do know that I've already deemed [RCF-NV] to be the prevailing party. [¶] But we're not finished because now I'm telling you something different from what I told you the last time when I told you to submit your motion to amend and your opposition. . . . [¶] And so with the further input that's needed in that regard, I think, once I have further input, at that point it would then be appropriate to invite [Kohn] to request [a] statement of decision and the various points that you want to have addressed in that statement of decision . . . ." Then, at the August 23, 2013 hearing, the trial court concluded that it need not provide a statement of decision because Kohn had not timely requested one. The court explained: "[T]he request for the statement of decision seems to be untimely per [section] 632 . . . , which requires . . . that a request for a statement of decision must be made within ten days of the trial. And I don't believe that that was done; and, therefore, no statement of decision is required. [¶] . . . [¶] But even assuming that I could, what I would normally do is just provide a brief statement of the decision that I've made along the lines of what I've indicated here and probably previously."

---

[7] Our Supreme Court is currently considering whether failure to issue a statement of decision upon a timely request is reversible per se (*F.P. v. Monier*, review granted Apr. 16, 2014, S216566).

10

The parties appear to now agree that Kohn's request for a statement of decision was timely. Instead, RCF-NV argues Kohn never made a proper request for a statement of decision because he did not specify any controverted issues to be covered by such a statement. We agree with RCF-NV. "Section 632 expressly requires that a party specify the issues on which it seeks findings." (*Harvard Investment Co. v. Gap Stores, Inc.* (1984) 156 Cal.App.3d 704, 709–710, fn. 3.)

In maintaining that his request for a statement of decision did not need to be more specific, Kohn relies on *City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277 (*City of Coachella*), a case that actually supports RCF-NV's position. The *City of Coachella* court stated, "a general, nonspecific request for a statement of decision does *not* operate to compel a statement of decision as to all material, controverted issues." (*Id.* at pp. 1292–1293, italics added.)

In *Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, the Fourth District Court of Appeal considered a trial court's refusal to prepare a statement of decision when the party's request "failed to identify *specifically* which issues he wanted the trial court to address." (*Id.* at p. 1394 & fn. 15.) The court found no error. "A party is not entitled to a statement of decision based on a 'general inquisition' that 'unfairly burdens the trial judge in that he must not only speculate which questions embrace ultimate as distinguished from evidentiary facts, but also search his recollection of the record without the assistance of a suggestion from counsel.' " (*Id.* at p. 1394.)

Just as in *Conservatorship of Hume, supra,* 140 Cal.App.4th at page 1394 and *City of Coachella, supra,* 210 Cal.App.3d at pages 1292–1293, Kohn's general, nonspecific request for a statement of decision did not operate to compel a statement of decision as to all material, controverted issues. The trial court did not err in refusing to provide one. Accordingly, we will imply all findings in favor of the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134; § 632.)

B.      *RCF-NV's Liability as Successor Corporation*

Next, we address Kohn's contention that substantial evidence does not support the trial court's finding that RCF-NV is not the same entity as RCF-CA or its successor. If,

11

as Kohn suggests, the trial court erred in finding RCF-NV to be such a "third party," rather than a "judgment debtor" by virtue of successor liability, then the judgment must be reversed regardless of the merit of his remaining arguments. Kohn contends: "The evidence clearly established that RCF-NV was a continuation of RCF-CA and RCF-NV was formed to fraudulently escape liability for the debts of RCF-CA. There is no evidence to support [a contrary finding.]"

Pursuant to section 187, a trial court has jurisdiction to modify a judgment to add additional judgment debtors, usually when a person or entity is the successor or alter ego of the original judgment debtor. (*McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 752, 753–754 (*McClellan*).) We review findings underlying the trial court's decision to name an additional judgment debtor for substantial evidence. (*Id.* at pp. 751–752.) Under that standard, we view the record in the light most favorable to the judgment to determine whether it is supported by substantial evidence. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.) Our power " 'begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [judgment].' " (*Ibid.*)

"There are two aspects to a review of the legal sufficiency of the evidence. First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all reasonable inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial. While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. The Court of Appeal 'was not created . . . merely to echo the determinations of the trial court. A decision supported by a mere scintilla of evidence need not be affirmed on review.' [Citation.] '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] The ultimate determination is whether a reasonable trier of fact could have found for the

12

respondent based on the whole record. [Citation.] While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations]." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632–1633, italics & fns. omitted.)

A corporation purchasing the principal assets of another corporation generally does not assume the seller's liabilities but will be held liable for these obligations if " '(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.' " (*Maloney v. American Pharmaceutical Co.* (1988) 207 Cal.App.3d 282, 287, quoting *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28.)

Although not entirely clear, it appears that Kohn relies on the third exception. The extension of liability to the purchasing corporation in these circumstances is based on "the principle that '[i]f a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old.' " (*McClellan, supra,* 89 Cal.App.4th at p. 753; *Blank v. Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456, 461 ["[c]orporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old"].)

*McClellan, supra*, 89 Cal.App.4th 746 is the only on point authority cited by Kohn. In *McClellan*, the plaintiff obtained a default award in an arbitration to enforce a construction contract with a homeowners association. After the trial court confirmed the award and entered judgment, the association formed a new corporation, and the old corporation filed bankruptcy. The new homeowners association consisted of the same homeowners, collected the same revenues, had the same board, the same management

company, and presided over the same condominiums as the predecessor. The trial court granted the plaintiff's motion to amend the judgment to name the new association as an additional judgment debtor on the ground that it was the successor corporation to the original entity. (*Id.* at pp. 749–750.)

The appellate court affirmed, concluding that the only difference between the two associations was a name change and that the new entity was a mere continuation of the former. (*McClellan, supra*, 89 Cal.App.4th at pp. 755–756.) The court explained: "It is well settled that when a corporation 'is used by an individual or individuals, or by another corporation, to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the acts as if they were done by the individuals themselves or by the controlling corporation . . . . [T]he court will disregard the "fiction" of corporate entity[.]' [Citation.] [¶] . . . [¶] . . . [And] '[i]f a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old. [Citations.]' " (*Id.* at pp. 752–753, italics omitted.)

We cannot agree with Kohn that substantial evidence does not support Judge Brewster Bereola's conclusion that RCF-NV was *not* a mere continuation of RCF-CA. First, we note that Kohn has not pointed us to any evidence in the record directly showing any transfer of assets from RCF-CA to RCF-NV. There is certainly evidence from which it could be reasonably inferred RCF-NV was a continuation of RCF-CA, used to avoid the latter's debts. For instance, RCF-NV's sole shareholder, officer, and director, Yashna, was also the secretary, chief financial officer, agent for service of process, and a director of RCF-CA. It is also undisputed that Yashna incorporated the entity that has since paid RCF-NV's rent (Royal Crown Bancorp, Inc.) on August 20, 1999—the day after the *Vatsana* judgment was entered. In her declaration, Yashna further admits that she was known in the industry as "Royal Crown Funding" and wanted to keep the name, so she filed a fictitious business name statement with the Alameda County Clerk-

14

Recorder for the name in 2001. Shortly beforehand, RCF-CA had been suspended by the California Franchise Tax Board. Yashna also stated, in a residential loan application executed in 2007, that she had been employed at "Royal Crown Funding" as "CFO Mortgage Lender" for 20 years, while failing to distinguish between the two corporations.

However, in her declaration, Yashna declares, under penalty of perjury, that she never was an owner of RCF-CA or controlled the company. She also declares that when RCF-CA was suspended and ceased doing business, she stopped doing business as RCF-CA, did not do anything with the Royal Crown Funding fictitious business name and let it lapse. In 2005, she used the same name for her Nevada corporation because RCF-CA had been defunct for years. "The testimony of just one witness is enough . . . , so long as that testimony is not inherently incredible." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.)

Yashna further declares that RCF-CA was a mortgage company that brokered loans for individuals and since Yashna has never been a broker, she could not have owned such a company. We disagree with Kohn that this justification conclusively undermines her claim that she alone owns RCF-NV. It may be reasonable to infer from Yashna's statements on the 2007 loan application that RCF-NV is also a company involved in mortgage lending. However, we cannot say that "[s]ince [Yashna] never obtained a broker's license, then as she stated she could not be the true owner and operator of [RCF-NV]." And, in any event, unlike the *McClellan* court we cannot say that RCF-NV is necessarily continuing *RCF-CA's business*. "The fact that it is possible to draw some inference other than that drawn by the trier of fact is of no consequence." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.)

C.      *Any Cause of Action for Damages is Barred by the Litigation Privilege*

Kohn next argues that his due process rights were violated by the trial court's award of monetary relief not requested in the complaint or contemplated by the causes of action pleaded. Specifically, he contends: "RCF-NV's complaint does not assert any claim or cause of action that would entitle RCF-NV to monetary damages and it was reversible error to award them." RCF-NV maintains that, by stipulating to the order in

15

which liability and damages would be addressed by the trial court, Kohn "clearly placed monetary damages before the court."

We need not decide the issue, however, because even if a cause of action for damages was properly pleaded or Kohn voluntarily submitted to try such a cause of action, the cause of action would be barred by the litigation privilege.[8] The litigation privilege, as codified in Civil Code section 47, subdivision (b), shields, among other things, any "publication or broadcast" made "[i]n any . . . judicial proceeding." " 'Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] . . . It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen, supra,* 37 Cal.4th 1048, 1057.) "To effectuate its vital purposes, the litigation privilege is held to be absolute in nature." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215.)

---

[8] The parties do not agree regarding what cause of action underlies the award of damages. Kohn contends that negligence is the cause of action. RCF-NV, on the other hand, claims that "[n]egligence is not an issue in this case." Instead, it appears to rely on a conversion theory. But negligence was the only cause of action asserted in RCF-NV's posttrial motion to amend the complaint, and "[t]he tort of conversion applies to personal property, not real property." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1295.) The conflict is of no matter because it is the gravamen of RCF-NV's complaint, not its specific tort theory, that governs our litigation privilege analysis. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057, 1062 (*Rusheen*); *Brown v. Kennard* (2001) 94 Cal.App.4th 40, 49–50 (*Brown*).)

"As a general rule, the privilege ' "applies only to communicative acts and does not privilege tortious courses of conduct." ' [Citations.] We have, however, extended the privilege to 'any publication . . . that is required [citation] or permitted [citation] by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked.' [Citation.] Thus, our courts have extended the protections of the litigation privilege to 'the recordation of a notice of lis pendens' [citation], 'the publication of an assessment lien' [citation], and 'the filing of a claim of mechanic's lien in conjunction with a judicial proceeding to enforce it' [citation]." (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 830–831.)

RCF-NV maintains: "The taking of property that does not . . . belong to [the] judgment debtor . . . is non-communicative conduct which [is] not absolutely privileged." *Brown, supra,* 94 Cal.App.4th 40 is directly on point and to the contrary. In that case, Brown sued Kennard for abuse of process after Kennard, who represented the judgment creditor, enforced a judgment by levying on Brown's account, containing exempt funds, despite the fact that Brown was not a party to the underlying action or a judgment debtor. (*Id.* at pp. 42–43.) The reviewing court agreed with the trial court that the abuse of process action was barred by the litigation privilege. (*Id.* at pp. 43, 51.) It explained: "California courts recognized long ago that a wrongful levy may constitute an abuse of process, and a levy is wrongful where made upon the exempt property of a judgment debtor. . . . [¶] . . . [¶] Notwithstanding the recognition of abuse of process in these decisions involving enforcement or enforcement-like contexts, the decisions do not address the litigation privilege . . . . More recent decisions, invoking that privilege, have strictly limited use of that tort in the judgment enforcement context, at least where successive seizures of exempt property are not involved. [¶] . . . [¶] . . . Undeniably, however, enforcement proceedings are an extension of the judicial process and are related to the realization of a litigation objective." (*Id.* at pp. 46–49, fns. omitted.)

The reviewing court was not persuaded by Brown's argument that the litigation privilege was inapplicable because he was deprived of his property interest in the bank

17

account, causing him injury outside of the judicial proceeding.  (*Brown, supra,* 94 Cal.App.4th at p. 49.)  "Brown misinterprets the meaning of injury outside of a judicial proceeding for abuse of process purposes. . . . Kennard employed a judicial process (writ of execution) to enforce a purported judgment pursuant to the purpose for which the process was designed, and did so within the confines of a judicial procedure. . . . [W]hile Brown does not have a remedy of an abuse of process action, he may move to quash the allegedly wrongful writ of execution and levy, and obtain a return of his property."  (*Ibid.*)  In rejecting the argument that the levy was not a communication within the litigation privilege, the court stated:  "The act of applying for a writ is privileged.  The privilege extends to torts arising from the privileged statement or publication.  As such, not only does the privilege protect the application for the writ of execution, it also extends to the act of carrying out the directive of the writ."  (*Id.* at p. 50, fns. omitted; see also *Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 57, 65–66 [litigation privilege bars abuse of process claim based on filing of application for a writ of sale against property owned by judgment debtor's spouse].)

In *Rusheen*, *supra,* 37 Cal.4th 1048, our Supreme Court agreed "with those cases[, including *Brown*,] that have applied the litigation privilege to limit the availability of the tort of abuse of process in the judgment enforcement context."  (*Id.* at p. 1065.)  It held that an attorney's "actions taken to collect a judgment, such as obtaining a writ of execution and levying on a judgment debtor's property," were protected by the litigation privilege.  (*Id.* at p. 1052.)  Specifically, the court concluded:  "[W]here the cause of action is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act.  In this case, because the claim for abuse of process was based on the communicative act of filing allegedly false declarations of service to obtain a default judgment, the postjudgment enforcement efforts, including the application for writ of execution and act of levying on property, were protected by the privilege."  (*Ibid.*)

The court observed that, although it is arguable that a physical levy merely results from the communicative writ of execution, "even if levying on property involves a

18

noncommunicative physical act . . . the relevant question [is] whether the *gravamen* of the action was communicative or noncommunicative conduct." (*Rusheen, supra*, 37 Cal.4th at p. 1061, fn. omitted.) In the case before it, "the gravamen of the action was not the levying act, but the procurement of the judgment based on the use of allegedly perjured declarations of service. Because these declarations were communications '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action' [citation], the litigation privilege applies to the declarations and protects against torts arising from the privileged declarations. . . . Thus, where the gravamen of the complaint is a privileged communication (i.e., allegedly perjured declarations of service) the privilege extends to necessarily related noncommunicative acts (i.e., act of levying)." (*Id.* at p. 1062.) "Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Id.* at p. 1065.) The court disapproved *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009, which had previously held that " 'wrongfully levying on property pursuant to a writ of execution is *not* subject to the litigation privilege.' " (*Rusheen,* at pp. 1060, 1065, italics added.)

Here, RCF-NV concedes that obtaining a writ of execution is absolutely privileged but contends that "[t]he conduct of executing on Yashna's property" was noncommunicative. However, just as in *Rusheen, supra,* 37 Cal.4th 1048, the gravamen of RCF-NV's complaint is that Kohn made an allegedly wrongful communication—when it applied for and obtained a writ of execution, then served and recorded a notice of levy against property owned by a third party. The other act complained of—the sale of the Property at the sheriff's auction—is necessarily related to the allegedly wrongful communication. Accordingly, we conclude that the litigation privilege applies. The authority relied on by RCF-NV does not convince us to reach a contrary conclusion. (*Buchanan v. Maxfield Enterprises, Inc.* (2005) 130 Cal.App.4th 418, 424–427 [litigation privilege does not bar complaint based on citizen's arrest; relying on now disapproved *Drum v. Bleau, Fox & Associates, supra,* 107 Cal.App.4th 1009]; *Mero v. Sadoff* (1995)

19

31 Cal.App.4th 1466, 1479–1480 [malpractice action based on injury inflicted during medical examination not privileged because based on noncommunicative conduct].)

We are mindful that the trial court was "disturbed" by the fact that, if it did not award damages, RCF-NV would be left without a remedy for wrongful levy on its Property. However, it is undisputed that RCF-NV had remedies that, if timely utilized, could have prevented sale of the Property on February 25, 2009. (§ 720.170, subd. (a).) It is Sham's and RCF-CA's failure to pay the underlying judgment debt, combined with RCF-NV's failure to pursue remedies in a timely manner, that is the ultimate source of any inequity in this case. In any event, "the policy underlying the litigation privilege of encouraging free access to the courts by discouraging derivative litigation simply outweighs the policy of providing . . . a tort remedy for an allegedly wrongful enforcement of a judgment." (*Brown, supra,* 94 Cal.App.4th at p. 50.)

## IV. DISPOSITION

The judgment is reversed and remanded with instructions to enter judgment for Kohn. Kohn shall recover his costs on appeal.

_____

BRUINIERS, J.

WE CONCUR:

_____

JONES, P. J.

_____

SIMONS, J.

A140158